**Jeanne HARRISON, Plaintiff–Counter–Defendant–Appellant,**

v.

**EDDY POTASH, INC., a New Mexico corporation; Robert L. Brown, Defendants–Counter–Claimants–Appellees.**

Jeanne HARRISON, Plaintiff–Counter–
Defendant–Appellee,

v.

EDDY POTASH, INC., a New Mexico
corporation, Defendant–Counter–
Claimant–Appellant,

and

Robert L. Brown, Defendant–
Counter–Claimant.

Nos. 96–2045, 96–2065.

United States Court of Appeals,
Tenth Circuit.

Oct. 30, 1998.

Floyd D. Wilson (Richard D. Barish with him on the brief), McCary, Wilson & Pryor, Albuquerque, New Mexico, for plaintiff-counter-defendant-appellant.

W.T. Martin, Jr. (Stephen S. Shanor with him on the brief), Martin & Shanor, Carlsbad, New Mexico, for defendant-counter-claimant-appellee.

Before BRISCOE, McWILLIAMS, and LUCERO, Circuit Judges.

## OPINION ON REMAND

BRISCOE, Circuit Judge.

This appeal is before us on remand from the United States Supreme Court for further consideration in light of *Faragher v. City of Boca Raton,* —— U.S. ——, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998). Having reviewed *Faragher* and the parties' supplemental briefs, we conclude the judgment in favor of defendant Eddy Potash, Inc., and against plaintiff Jeanne Harrison on her Title VII sexual harassment claim must be reversed and remanded for further proceedings.

### I.

Harrison brought this action against her supervisor, Robert Brown, and her employer, Eddy Potash, alleging hostile work environment sexual harassment in violation of Title VII of the Civil Rights Act of 1964 and various pendent state law claims. A complete recitation of the factual background of this case is contained in our prior opinion. *See Harrison v. Eddy Potash, Inc.,* 112 F.3d 1437 (10th Cir.1997) (*Harrison I*). A jury returned a verdict in favor of Harrison and against Brown on state law claims of intentional infliction of emotional distress and battery, but found against Harrison and in favor of Eddy Potash on the Title VII claim. Harrison appealed the jury's verdict on her Title VII claim, contending the district court erroneously instructed the jury concerning the requirements for imposing liability on an employer for sexual harassment perpetrated by a supervisory employee. Eddy Potash filed a cross-appeal claiming the district court lacked jurisdiction to entertain Harrison's Title VII claim because she failed to comply with grievance procedures set forth in her union's collective bargaining agreement (CBA).

In *Harrison I,* we rejected Eddy Potash's cross-appeal, concluding Harrison's failure to invoke the CBA's grievance procedure did not bar her from pursuing her Title VII claim in federal court. With respect to Harrison's appeal, we concluded the district court failed to properly instruct the jury regarding Eddy Potash's liability under Title VII. Accordingly, we reversed and remanded

for further proceedings on the Title VII claim. Eddy Potash filed a petition for writ of certiorari with the Supreme Court. Following its decision in *Faragher,* the Supreme Court granted Eddy Potash's petition and summarily vacated our decision and remanded this action to us for further consideration in light of *Faragher. Eddy Potash, Inc. v. Harrison,* —— U.S. ——, 118 S.Ct. 2364, 141 L.Ed.2d 732 (1998). Pursuant to our briefing order, both parties have filed supplemental briefs to address the impact of *Faragher* on this case.

### II.

As we discussed in *Harrison I,* 112 F.3d at 1443–46, there has been considerable confusion among the circuit and district courts concerning standards governing employer liability under Title VII for sexual harassment perpetrated by supervisory employees. In *Faragher* and in *Burlington Industries, Inc. v. Ellerth,* —— U.S. ——, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998) (issued the same day as *Faragher*), the Supreme Court provided much-needed clarification by specifically outlining the various avenues for imposing direct and vicarious liability on an employer for a supervisor's sexual harassment, and by establishing a general standard for imposing vicarious liability on an employer when a supervisor is alleged to have misused his or her delegated authority in sexually harassing a subordinate employee. Because these areas are relevant to the resolution of the appeal now before us, we proceed to review the Court's holdings in greater detail.

Starting from the proposition, first announced in *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986), that traditional principles of agency law are relevant in determining employer liability under Title VII, the Court in *Burlington* reviewed Restatement (Second) of Agency §§ 219(1) and (2) and catalogued the various ways in which an employer can be held directly or vicariously liable for a supervisor's sexual harassment. The Court indicated an employer can be held directly liable for a supervisor's sexual harassment "where the employer acts with tortious intent," or where the employer knew

or should have known about the harassment but failed to stop it. —— U.S. at ——, 118 S.Ct. at 2267. The Court further indicated an employer can be held vicariously liable for a supervisor's harassment (1) under the rare circumstances where "a supervisor engages in unlawful discrimination with the purpose, mistaken or otherwise, to serve the employer," *id.* at ——, 118 S.Ct. at 2266, (2) "where the agent's high rank in the company makes him or her the employer's alter ego," *id.* at ——, 118 S.Ct. at 2267, (3) "in the unusual case" where "there is a false impression that the [harassing employee] was a supervisor, when he in fact was not," and "the victim's mistaken conclusion" regarding the harassing employee's position was reasonable, *id.* at ——, 118 S.Ct. at 2268, or (4) in circumstances where a supervisor has misused his or her delegated authority in perpetrating the harassment. *Id.*[1]

Ultimately, the Court in *Faragher* and *Burlington* focused its attention on vicarious employer liability based upon a supervisor's misuse of delegated authority, a theory relied on by plaintiffs in both cases. The Court began its analysis by outlining what it termed "good reasons for vicarious liability for misuse of supervisory authority." *Faragher,* —— U.S. at ——, 118 S.Ct. at 2291. The Court noted "[t]he agency relationship affords contact with an employee subjected to a supervisor's sexual harassment, and the victim may well be reluctant to accept the risks of blowing the whistle on a superior." *Id.* The Court noted "[w]hen a person with supervisory authority discriminates in the terms and conditions of subordinates' employment, his actions necessarily draw upon his superior position over the people who report to him, or those under them, whereas an employee generally cannot check a supervisor's abusive conduct the same way that she might deal with abuse from a co-worker." *Id.* Finally, the Court

noted employers "ha[ve] a greater opportunity to guard against misconduct by supervisors [through screening, training, and performance monitoring] than by common workers." *Id.* Notwithstanding these reasons, however, the Court emphasized this theory of vicarious liability could not be recognized under Title VII unless it was "square[d] ... with *Meritor*'s holding that an employer is not 'automatically' liable for harassment by a supervisor who creates the requisite degree of discrimination." *Id.* The Court concluded the only viable way to do so was "to recognize an affirmative defense to liability in some circumstances, even when a supervisor has created the actionable environment." *Id.* Accordingly, the Court adopted the following standard for vicarious employer liability for a supervisor's misuse of delegated authority:

> An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee. When no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence, *see* Fed.R.Civ.P. 8(c). The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise. While proof that an employee had promulgated an antiharassment policy with complaint procedure is not necessary in every instance as a matter of law, the need for a stated policy suitable to the employment circumstances may appropriately be addressed in any case when

---

1. In *Faragher,* the Court discussed only two of these theories of vicarious liability. *See* —— U.S. at ——–——, 118 S.Ct. at 2286–90 (scope of employment theory based on Restatement § 219(1)), and 2290–93 (misuse of delegated authority theory based on Restatement § 219(2)(d)). The Court also acknowledged the theory of direct liability based on an employer's failure to respond after it knew or should have known of the

alleged harassment, but found it unnecessary to discuss that theory in detail. *Id.* at ——, 118 S.Ct. at 2294. In *Wright–Simmons v. City of Oklahoma City,* 155 F.3d 1264 (10th Cir.1998), we recently discussed two theories of vicarious liability and one theory of direct liability in the context of considering a hostile environment racial harassment claim.

litigating the first element of the defense. And while proof that an employee failed to fulfill the corresponding obligation of reasonable care to avoid harm is not limited to showing an unreasonable failure to use any complaint procedure provided by the employer, a demonstration of such failure will normally suffice to satisfy the employer's burden under the second element of the defense. No affirmative defense is available, however, when the supervisor's harassment culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment.

*Id.* at ———–———, 118 S.Ct. at 2292–93; *Burlington,* ——— U.S. at ———, 118 S.Ct. at 2270.

### III.

Our task now is to apply the holdings outlined above to the case before us. In her appeal, Harrison asserted the district court erred by failing to properly instruct the jury on three theories of vicarious employer liability: (1) liability resulting from Brown's high degree of managerial control over her; (2) liability resulting from Brown's apparent authority to commit the sexual harassment; and (3) liability resulting from Brown's misuse of actual supervisory authority. We address the theories in order.

*High degree of managerial control*

■■■ Harrison asserted Eddy Potash could be held vicariously liable for the actions of Brown because Brown exercised significant control over her conditions of employment and could thus be considered the "alter ego" of Eddy Potash. In *Harrison I,* we rejected this theory of liability, concluding it was based upon a misreading of our opinion in *Sauers v. Salt Lake County,* 1 F.3d 1122 (10th Cir.1993) (discussing whether a Title VII claim asserted against an individual defendant with significant control over the plaintiff could operate as a claim against the employer itself), and concluded the district court did not abuse its discretion in denying Harrison's requested instruction on this theory. *Id.* at 1451.

Nothing in *Faragher* or *Burlington* convinces us our conclusion on this point was incorrect. Although the Supreme Court in *Burlington* acknowledged an employer can be held vicariously liable under Title VII if the harassing employee's "high rank in the company makes him or her the employer's alter ego," *Burlington,* ——— U.S. at ———, 118 S.Ct. at 2267, nothing in that opinion suggests a supervisory employee can be considered an employer's "alter ego" simply because he or she possesses a high degree of control over a subordinate. Thus, we conclude the district court did not abuse its discretion in refusing to tender Harrison's requested instruction on this theory of liability.[2]

*Apparent authority*

In her second theory of liability, Harrison asserted Eddy Potash should be held vicariously liable because Brown was acting with apparent authority when he sexually harassed her. More specifically, Harrison asserted that Eddy Potash, through its own conduct, caused her to believe Brown had authority to sexually harass her. In *Harrison I,* we concluded this theory was viable, 112 F.3d at 1444, 1446, and further concluded the district court had failed to properly instruct the jury on this theory. *Id.* at 1448–50.

■■■ In light of *Faragher* and *Burlington,* we must now reject this theory of liability. In *Burlington,* the Supreme Court noted that, "[i]n the usual case, a supervisor's harassment involves misuse of actual power, not the false impression of its existence." ——— U.S. at ———, 118 S.Ct. at 2268. Only in an "unusual case," the Court held, where "it is alleged there is a false impression that the actor was a supervisor, when he in fact was not, [and] the victim's mistaken conclusion [was] a reasonable one," can a theory of employer liability based upon apparent authority be pursued. *Id.*

---

**2.** Nor was Harrison entitled to an instruction under the "alter ego" theory of liability recognized in *Burlington.* The evidence presented at trial clearly indicated Brown was a low-level supervisor who could in no way be considered by a reasonable juror to be the "alter ego" of Eddy Potash.

*Misuse of actual supervisory authority*

In her final theory of liability, Harrison asserted Eddy Potash was responsible for the sexual harassment because Brown had been aided in accomplishing the harassment by the existence of his actual supervisory authority over her. In *Harrison I*, we agreed this was a viable theory of liability, 112 F.3d at 1445–46, and concluded the district court abused its discretion in refusing to instruct the jury on this theory. *Id.* at 1451.

After reviewing *Faragher* and *Burlington,* we reaffirm our earlier conclusions. As outlined above, the Supreme Court recognized an employer is vicariously liable for misuse of supervisory authority. —— U.S. at ——, 118 S.Ct. at 2270, —— U.S. at —— – ——, 118 S.Ct. at 2292–93. In this case, the evidence presented at trial clearly indicated Brown had actual and immediate supervisory authority over Harrison and misused that authority to sexually harass her. Thus, Harrison was entitled to have the jury instructed on her "misuse of actual authority" theory of liability against Eddy Potash, and was clearly prejudiced by the district court's failure to do so.

In its supplemental brief, Eddy Potash contends that, notwithstanding any instructional errors, it is entitled to judgment as a matter of law under *Faragher* and *Burlington* because the evidence presented at trial demonstrated Brown took no tangible employment action against Harrison, Eddy Potash exercised reasonable care in preventing and promptly correcting any sexual harassment in the workplace, and Harrison unreasonably failed to take advantage of corrective opportunities provided to her by Eddy Potash. Although we agree Brown took no tangible employment action against Harrison, thereby entitling Eddy Potash to assert the affirmative defense outlined in *Faragher* and *Burlington,* we disagree that Eddy Potash is entitled to judgment as a matter of law. Aside from the fact that neither prong of the affirmative defense was specifically at issue in the first trial, the evidence actually presented at trial reasonably relating to these prongs is not so one-sided as to entitle Eddy Potash to a judgment in its favor. Indeed, the evidence pre-sented appears to pose serious questions concerning the reasonableness of Eddy Potash's conduct in preventing sexual harassment in the workplace. *See Harrison I*, 112 F.3d at 1442 (although Eddy Potash had in place an official policy against sexual harassment, evidence indicated Harrison had not been made aware of that policy prior to Brown's harassment of her).

We therefore reverse the judgment of the district court in favor of Eddy Potash and against Harrison on her Title VII claim and remand the case to the district court for further proceedings.

## IV.

As a final matter, we note that *Faragher* and *Burlington* leave untouched our resolution of Eddy Potash's cross-appeal in *Harrison I*. Accordingly, we reaffirm our holding that Harrison's failure to comply with the grievance procedures set forth in the CBA does not bar her from pursuing her Title VII claim in federal court. *See* 112 F.3d at 1451–54.

## V.

With respect to plaintiff Harrison's appeal (No. 96–2045), we REVERSE the judgment of the district court and REMAND for further proceedings consistent with this opinion. With respect to defendant Eddy Potash's cross-appeal (No. 96–2065), we AFFIRM the judgment of the district court.