**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 29 2001**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**
**TENTH CIRCUIT**

---

DAVID E. HOLLINS,

      Plaintiff-Appellant,

v.

DELTA AIRLINES,

      Defendant-Appellee,

No. 99-4072

---

Appeal from the United States District Court
for the District of Utah
(D.C. No. 97-CV-788-S)

---

Larry G. Reed, of Anderson & Karrenberg, Salt Lake City, Utah, for Plaintiff-Appellant.

Janet Hugie Smith, of Ray, Quinney & Nebeker, Salt Lake City, Utah (Frederick R. Thaler, of Ray, Quinney & Nebeker, Salt Lake City, Utah, and Andrew J. Fisher, Delta Airlines, Inc., Atlanta, Georgia, with her on the brief), for Defendant-Appellee.

---

Before **SEYMOUR**, **MURPHY,** Circuit Judges, and **KANE**,[*] District Judge.

---

**SEYMOUR**, Circuit Judge.

---

[*]Honorable John L. Kane, Jr., Senior District Judge, United States District Court for the District of Colorado, sitting by designation.

David E. Hollins appeals from the order of the district court granting summary judgment to his former employer, Delta Airlines, on his racial harassment claim under 42 U.S.C. § 1981 and Title VII, 42 U.S.C. § 2000e-2. For the reasons stated below, we affirm.

**I**

David E. Hollins began his employment as an associate customer service agent with Delta Airlines in December 1995. On February 4, 1996, a white co-worker, Rex Fidler told Mr. Hollins the following joke: "How can you tell when a person is well-hung?" Answer: "When you can't get two fingers between his neck and the rope." App., vol. I at 47, 124. Mr. Hollins immediately reported the joke to two Delta supervisors, Dennis Jacobson and Carla Sutera. Mr. Jacobson and Ms. Sutera spoke with Mr. Fidler about the inappropriateness of the joke and requested written statements from Mr. Fidler, Mr. Hollins, and another Delta employee who had witnessed the incident. Delta thereafter gave Mr. Fidler a warning letter and placed it in his employment file.

At some point prior to his telling of the "well-hung" joke, Mr. Fidler had told a group of employees, including Mr. Hollins, the following joke: "If you have a Black, a Mexican, and a Tongan in a car, who is the driver?" Answer: "The Sheriff." App., vol. I at 50; vol. II at 170. No employee ever reported this

joke to a Delta supervisor.

Sometime after the "well-hung" joke incident, Mr. Hollins noticed several hangman's nooses dangling from the ceiling above his work area. He also noticed nooses hanging in two other areas. One was hung in such a way that it swung down when a door was opened. The other was hung in an area where an African-American employee worked. Mr. Hollins did not complain about these nooses to anyone. However, Charles Wilson, an African-American co-worker of Mr. Hollins, complained about the nooses to Tom Brothers, the immediate supervisor of both Mr. Hollins and Mr. Wilson. Mr. Brothers immediately removed all the ropes and then held a meeting with the employees in which he indicated the ropes were offensive and would not be tolerated. Shortly thereafter, an employee named Stan White told Mr. Brothers that it was he who had tied the ropes. He stated he tied ropes to pass the time and had not intended to offend anyone. Mr. White was given a warning letter and a copy was placed in his employment file.

According to Mr. Hollins, Mr. Brothers' treatment of him dramatically changed after he complained about the "well-hung" joke. Mr. Brothers began to follow him during his meal breaks, warning him and other African-American employees that "You'd better be back to work before I'm through eating." App., vol. II at 172. He followed and "intently" watched African-American employees while they ate. *Id.* Mr. Brothers also began to stand near Mr. Hollins while he

-3-

was at work and to scrutinize his work closely.  He followed Mr. Hollins and used the restroom at the same time.  Mr. Hollins also contends Mr. Brothers began to write him up for minor infractions in the workplace that, while violations of Delta policy, were often ignored by supervisors.  However, Mr. Hollins never complained of Mr. Brother's conduct to a supervisor or to Delta's Equal Employment Opportunity (EEO) officer.

In granting summary judgment for Delta, the district court focused on whether the treatment Mr. Hollins received from his co-workers and supervisors amounted to a racially hostile work environment, relying on this Court's analysis in *Bolden v. PRC, Inc.*, 43 F.3d 545 (10th Cir. 1994).  The district court held that Mr. Hollins failed to meet the *Bolden* requirement that the harassment be "pervasive or severe enough to alter the terms, conditions, or privileges of employment" and that it be "racial or stem[] from racial animus."  *Id.* at 551.  The court concluded "there is no viable evidence that either the hanging joke or rope incidents were racial or stemmed from racial animus," and that while the "'sheriff' joke appears to have racial overtones . . . it clearly was an isolated incident."  App., vol. II at 253.  The district court held it "uncontroverted that one of Delta's employees had a habit of tying knots of various kinds in ropes found in the area and that he sometimes would throw the ropes over pipes near the ceiling. The employee did not view the ropes as racial symbols."  *Id.*  Alternatively, the

court held that Delta was entitled to summary judgment in any event because it took prompt remedial action whenever it learned about the offensive conduct.

## II

We review a district court's grant of summary judgment de novo, applying the same legal standard used by the district court. *Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999). That legal standard is whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). If there is no genuine issue of material fact in dispute, we determine whether the district court correctly applied the substantive law. *Simms*, 165 F.3d at 1326.

The issue presented for our resolution is whether the district court erred in concluding that Mr. Hollins was not subjected to a racially hostile work environment and that even if he were, Delta was not liable for the harassment. For the reasons discussed below, we affirm the district court's grant of summary judgment. In so doing, we reject the district court's conclusion that the "well-hung" joke and the presence of hangmen's nooses were uncontrovertedly innocuous. The joke appears to be a facially racist remark, and the nooses may

also have been racially motivated, regardless of the rope-tying employee's representations to Delta. These are genuine issues of material fact that preclude summary judgment on the hostile work environment issue. However, we agree with the district court that Delta can not be held liable for the asserted harassment on this record.

An employer may be liable for the racially harassing conduct of its employee under three theories, all of which are derived from the common law of agency: the negligence theory, under which the employer fails to remedy a hostile work environment it "knew or should have known about;" the actual authority theory, under which an employee harasses another employee within the scope of his employment; or the apparent authority theory, under which the harassing employee acts with apparent authority from the employer. *Griffith v. State of Colorado, Div. of Youth Serv.*, 17 F.3d 1323, 1330 (10th Cir. 1994); *see also Harrison v. Eddy Potash, Inc.*, 158 F.3d 1371, 1374-75 (10th Cir. 1998).

Mr. Hollins contends the situation here implicates all three theories of liability. Pursuant to the negligence theory, he argues that Delta knew or should have known about the hostile work environment he suffered because Delta was notified about the "well-hung" joke and the nooses. Alternatively, he asserts that Delta is vicariously liable for the acts of Mr. Brothers because, as a supervisor, Mr. Brothers acted with either actual or apparent authority. We examine each of

these contentions.

### *A. Negligence Theory*

Employers are not automatically liable for harassment perpetrated by their employees. *Meritor Sav. Bank v. Vinson*, 477 U.S. 57, 72 (1986). In order to prevail on a negligence-based hostile work environment claim, Mr. Hollins "bears the burden of establishing that the employer's conduct was unreasonable." *Wilson v. Tulsa Junior College*, 164 F.3d 534, 541 n.4 (10th Cir. 1998). He must prove that Delta was itself negligent because "it knew or should have known about the conduct and failed to stop it." *Burlington Indust., Inc. v. Ellerth*, 524 U.S. 742, 759 (1998). Thus, the focus is not on whether the employer is liable for the bad acts of others, but whether the employer itself is responsible for failing to intervene.

At the outset, we note that Delta has a written harassment policy. Although this fact is more directly relevant to evaluating Mr. Hollins' vicarious liability claims, it is also relevant to his actual liability argument. Delta's harassment policy encourages employees to go to their supervisors or, if they "cannot resolve the matter" within their own department, to go directly to Delta's EEO director. App., vol. I at 155. This policy satisfies the requirements placed on harassment policies by the Supreme Court in its recent hostile work environment decisions.

*See Burlington*, 524 U.S. at 765; *Faragher v. City of Boca Raton*, 524 U.S. 775, 807-09 (1998).

The "sheriff" joke which Rex Fidler told Mr. Hollins was never reported by Mr. Hollins or any other Delta employee to any Delta supervisor, as Mr. Hollins concedes. Delta cannot be held liable for this incident because there is no evidence it could have reasonably known of it. The "well-hung" joke was timely reported by Mr. Hollins to two supervisors, who acted immediately by taking written statements, reprimanding Mr. Fidler, and sending Mr. Fidler a warning letter which went on his employment record at Delta. Mr. Hollins does not claim Mr. Fidler told him any other racially offensive jokes after this intervention by Delta. Finally, as soon as the nooses were brought to the attention of Mr. Brothers, he immediately removed the ropes, warned his employees against such offensive and intolerable conduct, and reprimanded the employee involved. Mr. Hollins does not contend that any other ropes were found in the workplace after this action was taken by Delta.

Although Mr. Hollins asserts that Mr. Brothers' conduct was racially harassing,[1] Mr. Hollins never complained about Mr. Brothers to a supervisor or to

---

[1]There appears to be a conflict between Mr. Hollins' deposition testimony and a subsequent affidavit he filed with the court. "[A]n affidavit submitted on a summary judgment motion which conflicts with the affiant's earlier sworn testimony is not automatically disregarded." *Durtsche v. American Colloid Co.*, 958 F.2d 1007, 1010 n.2 (10th Cir. 1992). Before disregarding an affiant's

Delta's EEO officer. Consequently, Delta did not have actual knowledge of the situation. Moreover, knowledge cannot reasonably be imputed to Delta given that it had no prior notice of any kind that Mr. Hollins believed he was being harassed by a supervisor.

In each of the above incidents, when Delta was presented with a potentially harassing situation, it immediately investigated, took corrective action, and disciplined any offending employees. Delta conducted itself as a reasonable employer. *Wilson*, 164 F.3d at 541 n.4.

### B. Vicarious Liability

Mr. Hollins' alternative theory of liability is that Mr. Brothers acted with either the actual or apparent authority of Delta, making Delta vicariously liable for his acts. We cannot properly evaluate this argument because Mr. Hollins offered no evidence whatsoever that would show Mr. Brothers was acting at the behest of Delta, with actual authority. He also offered no evidence that Mr. Brothers was a "management level employee" who could be said to be acting under the apparent authority of his employer. *See Lockard v. Pizza Hut, Inc.*, 162

---

conflicting affidavit, a district court judge must determine whether, as an evidentiary matter, the affidavit was submitted in order to create a "sham fact issue." *Franks v. Nimmo*, 796 F.2d 1230, 1237 (10th Cir. 1986). The district court here did not reach this issue and we need not decide it in order to determine the outcome of this case.

F.3d 1062, 1074 (10th Cir. 1998); *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 674 (10th Cir. 1998). Delta, conversely, provided evidence on the two issues it must prove in order to mount an affirmative defense to vicarious liability: "(a) that the employer exercised reasonable care to prevent and correct promptly any . . . harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer . . ." *Harrison*, 158 F.3d at 1375 (*quoting Faragher*, 524 U.S. at 2293). Under these circumstances, Delta's responses were reasonable, and it may not be held liable for any racial harassment that may have occurred in the workplace.

We **AFFIRM** the judgment of the district court.