FILED
United States Court of Appeals
Tenth Circuit

January 23, 2013

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

ROLAND BENAVIDES,

      Plaintiff-Appellant,

v.

CITY OF OKLAHOMA CITY,

      Defendant-Appellee.

No. 12-6107
(D.C. No. 5:11-CV-00126-C)
(W.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **ANDERSON** and **BALDOCK**, Circuit Judges, and **BRORBY**, Senior Circuit Judge.

In this employment discrimination case, Roland Benavides appeals from a

district court order that granted the City of Oklahoma City's motion for summary

judgment on Benavides' claims under the Americans with Disabilities Act (ADA),

42 U.S.C. §§ 12131-12134, and the Family and Medical Leave Act (FMLA),

---

[*]     After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

29 U.S.C. §§ 2611-2619. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

## BACKGROUND

Benavides began working for the City as a police officer in 1992. Ultimately, he became a detective, and was assigned to the burglary unit in 2006. Due to various medical conditions, including dilated cardiomyopathy, Benavides took sick leave and donated leave under the FMLA.

On May 14, 2010, one of Benavides' co-workers filed a confidential report indicating that Benavides was suspected of illegal gambling. Based on that report, the police chief ordered an investigation.

One week later, Benavides complained to his immediate supervisor, Lieutenant Frank O'Brien, that his co-workers had been harassing him regarding his health problems and use of sick leave. Lieutenant O'Brien met with Benavides' co-workers in the burglary unit and instructed them to stop commenting on Benavides' use of sick leave.

On May 27, Benavides reduced his allegations to writing, stating that (1) co-workers had placed a can of cremated ashes on his desk because they had heard he was on his death bed; (2) co-workers had on several occasions placed a packaged tampon on his chair; (3) one co-worker created a video cartoon negatively depicting his medical condition and sent it around the office; (4) that same co-worker told Benavides that if he worked for the military, he would have been fired; and

- 2 -

(5) a co-worker called him a "dumbass" at least four times regarding his use of time off. Lieutenant O'Brien again spoke with Benavides' co-workers, and forwarded Benavides' allegations up the chain of command. The police chief ordered an investigation.

Captain Kim Flowers began that investigation on June 17, interviewing Benavides about his allegations. She interviewed him again several days later, and then proceeded to interview seventeen of his co-workers, as well as Lieutenant O'Brien.

On July 26, Captain Flowers issued a detailed, 61-page report, determining that the cartoon video and "dumb ass" remarks violated various departmental policies. As for the other comments and incidents, she determined that they were either part of the jovial environment that existed in the burglary unit, and in which Benavides had at times participated, or were simply not confirmed.

On September 21, 2010, Benavides was subpoenaed to testify before a grand jury. Pursuant to departmental policy for officers about to be charged with a crime, Benavides was immediately placed on paid administrative leave.

On October 8, 2010, as a result of Captain Flowers' investigation, the Department formally reprimanded the co-worker who had disseminated the cartoon video, and it issued "documented counseling[s]" to three co-workers regarding the "dumb ass" remarks and tampon incidents. Aplt. App., Vol. III at 526-28.

On October 19, 2010, Benavides filed a discrimination charge with the Oklahoma Human Rights Commission. In February 2011, Benavides sued the City, the Department, the police chief, Captain Flowers, and various co-workers for violations of the ADA and the FMLA. The district court dismissed the claims against the individual defendants and the Department, and the case proceeded against only the City.

In June 2011, while still on paid administrative leave, Benavides was indicted in state court on gambling charges. In January 2012, he resigned from the Department, stating that he was "voluntarily resign[ing] . . . as the result of [his] declining medical condition due in part to the stress related events of [his] disability case." *Id.*, Vol. I at 75.

The City moved for summary judgment. While briefing was in progress, Benavides pleaded guilty to one count of illegal gambling and one count of using a computer to illegally gamble, and he was given a "5 year unsupervised deferred sentence." *Id.* at 202.

The district court granted the City's summary-judgment motion. It concluded that Benavides was not disabled under the ADA, but even if he was disabled, the working conditions at the Department were not hostile, and were promptly investigated by the Department. Further, it rejected his claims for retaliation, concluding that Benavides failed to show a materially adverse job action or that being placed on administrative leave was a pretext for retaliation.

DISCUSSION

## I. Standards of Review

We review the district court's order granting summary judgment de novo, applying the same standard as the district court. *Ribeau v. Katt*, 681 F.3d 1190, 1194 (10th Cir. 2012). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "When applying this standard, we view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." *Ribeau*, 681 F.3d at 1194.[1]

## II. ADA Claims

The ADA prohibits "discriminat[ion] against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).[2] On appeal,

---

[1]     Benavides argues that the district court construed the facts in a light favorable to the City. We disagree. In any event, our review of a summary-judgment decision is de novo.

[2]     We need not reach the issue of whether Benavides is disabled under the ADA, *see* 42 U.S.C. § 12102(1) (extending ADA protections to persons who have "a physical or mental impairment that substantially limits one or more major life activities," a "record of such an impairment," or if they are "regarded as having such an impairment"), because other aspects of his ADA claims are dispositive. Additionally, a disability is not a prerequisite to an ADA-retaliation claim. *Selenke v. Med. Imaging of Colo.*, 248 F.3d 1249, 1264 (10th Cir. 2001).

Benavides identifies four ADA-based theories:  hostile work environment; failure to accommodate; discrimination; and retaliation.

## A.  Hostile Work Environment

"For a hostile environment claim to survive a summary judgment motion, a plaintiff must show that a rational jury could find that the workplace was permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *MacKenzie v. City & Cnty. of Denver*, 414 F.3d 1266, 1280 (10th Cir. 2005) (brackets and quotation omitted).  But the standard for imposing liability on an employer for workplace harassment is heightened where, as here, the perpetrators of that harassment were a plaintiff's co-workers.  Specifically, the employer, "as opposed to the individual directly responsible for the misbehavior, is liable, on a negligence theory, if it knew or should have known about the conduct and failed to stop it." *Bertsch v. Overstock.com*, 684 F.3d 1023, 1027 (10th Cir. 2012) (quotation omitted).  Thus, "[a]n employer is absolved of liability for acts of harassment by its employees if it undertakes remedial and preventative action reasonably calculated to end the harassment." *Duncan v. Manager, Dep't of Safety, City & Cnty. of Denver*, 397 F.3d 1300, 1310 (10th Cir. 2005) (quotation omitted).

Benavides does not devote any legal argument to the City's remedial response to his harassment allegations.  "[A] party waives those arguments that its opening

brief inadequately addresses." *Harsco Corp. v. Renner*, 475 F.3d 1179, 1190 (10th Cir. 2007).

Even if we were to construe Benavides' legal briefs as adequately addressing the issue, the record indicates that the City reasonably responded to his allegations. Specifically, after Benavides brought the offending conduct and remarks to light, Lieutenant O'Brien twice instructed Benavides' co-workers to cease. Captain Flowers soon thereafter initiated an extensive investigation, concluding that the cartoon video and "dumb ass" remarks violated departmental policy. And the City imposed discipline for not only the infractions found by Captain Flowers, but also for the tampon incidents. Although the City placed Benavides on leave before formally disciplining his co-workers, Benavides identifies nothing indicating that his co-workers continued their harassment after Lieutenant O'Brien's second warning.[3] "A stoppage of harassment" suggests a reasonable employer response. *Tademy v. Union Pac. Corp.*, 614 F.3d 1132, 1148 (10th Cir. 2008) (quotation omitted). In any event, Benavides has not carried his burden of demonstrating that the City's response was inadequate. *See Hollins v. Delta Airlines*, 238 F.3d 1255, 1258 (10th Cir. 2001) ("In order to prevail on a negligence-based hostile work environment claim, [the

---

[3]     To the extent Benavides asserts that after he complained he was shunned by his co-workers, he cannot establish a hostile work environment. *See Palesch v. Mo. Comm'n on Human Rights*, 233 F.3d 560, 567 (8th Cir. 2000) (noting that ostracism, without more, is insufficient to create a hostile work environment).

employee] bears the burden of establishing that the employer's conduct was unreasonable." (quotation omitted)).

We conclude that there is no genuine issue of fact as to whether the City took prompt and appropriate remedial action in response to Benavides' allegations of harassment. Thus, we need not address whether Benavides was subjected to conduct that was sufficiently severe or pervasive as to constitute a hostile work environment.

### B. Failure to Accommodate

Failing to reasonably accommodate an employee's disability is a type of discrimination. *See* 42 U.S.C. § 12112(b)(5)(A). Benavides argues that he "made several requests to the City for job transfers" "to address his serious medical condition," but "[o]n each occasion [he] was rejected and remained in the burglary detail." Aplt. Opening Br. at 36. But he did not make a failure-to-accommodate argument below, and we decline to address an argument not raised in the district court. *See ClearOne Commc'ns, Inc. v. Biamp Sys.*, 653 F.3d 1163, 1182 (10th Cir. 2011) ("This court will generally not consider an argument that was not raised in the district court."). Moreover, Benavides does not adequately brief the argument for our consideration. *See Hennagir v. Utah Dep't of Corr.*, 587 F.3d 1255, 1264 (10th Cir. 2009) ("When alleging a failure to accommodate, a plaintiff carries the burden of demonstrating the existence of a facially reasonable accommodation.").

## C. Discriminatory Administrative-Leave Conditions

Benavides argues that while on administrative leave, he was "prohibited from engaging in several income producing activities that in the past . . . he was capable of performing." Aplt. Opening Br. at 37-38. "To establish a prima facie case of discrimination under the ADA, Plaintiff must demonstrate (1) that he is 'disabled' within the meaning of the ADA, (2) that he is qualified-with or without reasonable accommodation; and (3) that he was discriminated against because of his disability." *Butler v. City of Prairie Vill.*, 172 F.3d 736, 748 (10th Cir. 1999) (footnotes and quotation omitted). Benavides' argument fails under the last prong.

"In order to demonstrate discrimination, a plaintiff generally must show that he has suffered an *adverse employment action* because of the disability." *EEOC v. C.R. England, Inc.*, 644 F.3d 1028, 1038 (10th Cir. 2011) (quotation omitted; emphasis added). Although this court liberally defines the term "adverse employment action," it generally refers only to "acts that constitute a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or [to] a decision causing a significant change in benefits." *Id.* at 1040 (brackets and quotations omitted). At the very least, "a plaintiff must show that the alleged adverse action caused more than *de minimis* harm to or a *de minimis* impact upon [his] job opportunities or status." *Id.* (quotation omitted).

Benavides does not dispute that he was paid his full salary while on leave. Rather, he complains that he could not use his police background in side jobs while on leave. But the only side job he identified during his deposition was intermittent security work that he had not done for at least seven years before being placed on leave. We conclude that no rational jury could find that the restriction on Benavides' administrative leave was anything but de minimis.

Even if we were to conclude that Benavides had demonstrated a prima facie case of discrimination in regard to being placed on paid administrative leave, the City has identified a legitimate, nondiscriminatory reason for doing so, and Benavides has not shown pretext. *See C.R. England, Inc.*, 644 F.3d at 1038 (noting that under the familiar *McDonnell Douglas* framework,[4] once an employer responds to a prima facie case by "articulat[ing] a legitimate, nondiscriminatory reason for its actions[,] . . . the burden then shifts back to the plaintiff to show that the [employer's] stated reasons are merely pretextual" (quotation omitted)). Specifically, the City asserts that it placed Benavides on administrative leave because he was subpoenaed to testify before a grand jury and he was suspected of illegal gambling—a crime that Benavides ultimately pleaded guilty to committing. Although Benavides contends that some of his co-workers gambled and were not placed on administrative leave, he has not undermined the City's evidence that it had ordered administrative leave for eleven other employees who had either been charged with a crime or were facing

---

4   *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

- 10 -

criminal charges.  In short, Benavides has not shown that the City's "proffered explanation is unworthy of credence" or that "a discriminatory reason more likely motivated" the decision to place him on paid administrative leave.  *Zamora v. Elite Logistics, Inc.*, 478 F.3d 1160, 1166 (10th Cir. 2007).

Summary judgment was proper on Benavides' ADA-discrimination claim.

### D.  Retaliation

"A prima facie case of retaliation under the ADA requires:  (1) that an employee engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action."  *EEOC v. Picture People, Inc.*, 684 F.3d 981, 988 (10th Cir. 2012) (brackets and quotation omitted).  Benavides claims that the City retaliated against him for complaining about his co-workers' conduct, and that the City acted against him by condoning a hostile work environment, not transferring him, and placing him on administrative leave.  We reject each of these claims.

Regarding retaliatory co-worker harassment, an employer can be liable only if "its supervisory or management personnel either (1) orchestrate the harassment, or (2) know about the harassment and acquiesce in it in such a manner as to condone and encourage the co-workers' actions."  *Gunnell v. Utah Valley State Coll.*, 152 F.3d 1253, 1265 (10th Cir. 1998).  As we discussed above in Part II.A., the City

reasonably responded to Benavides' allegations of harassment. He thus cannot survive summary judgment on a retaliatory-harassment theory.

As for a retaliatory refusal-to-transfer theory, Benavides simply directs this court's attention to his failure-to-accommodate theory. But his accommodation theory is little more than a summary allegation in his opening brief. In the absence of adequate argument concerning a retaliatory refusal to transfer, we deem the theory waived. *See Christian Heritage Acad. v. Okla. Secondary Sch. Activities Ass'n*, 483 F.3d 1025, 1031 (10th Cir. 2007) (applying waiver when appellant identified issue in opening brief, but devoted less than one page to it and provided "no other argument and no citations").

Finally, we reject Benavides' retaliatory-administrative-leave argument on the same two bases discussed above regarding his discriminatory-administrative-leave argument. *See* Part II.C. Specifically, Benavides did not suffer a materially adverse action by being placed on paid administrative leave, and even if he did, he failed to show that the City's reason for the leave was pretextual.

### III. FMLA Retaliation

"The FMLA makes it unlawful for an employer to retaliate against an employee for exercising [his] rights to FMLA leave." *Khalik v. United Air Lines*, 671 F.3d 1188, 1193 (10th Cir. 2012). To establish a prima facie case of FMLA retaliation, Benavides must show (1) he engaged in protected activity, (2) the City took a materially adverse action, and (3) there is a causal connection between the

protected activity and the adverse action. *Id.* If a prima facie case is established, "the burden then shifts to the [City] to offer a legitimate reason for [its action], and if it does, then [the burden shifts] back to [Benavides] to present evidence to suggest the stated reason was pretextual." *Robert v. Bd. of Cnty. Comm'rs of Brown Cnty.*, 691 F.3d 1211, 1219 (10th Cir. 2012).

Benavides states that he "relies on the same arguments" he used "for proof of his ADA claims." Aplt. Opening Br. at 45. We conclude that his FMLA-retaliation claim fails for the same reasons his ADA-retaliation claim failed.

## CONCLUSION

The judgment of the district court is affirmed.

Entered for the Court


Stephen H. Anderson
Circuit Judge