**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 13, 2013**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

MEGAN D. MCCAFFERTY,

      Plaintiff–Appellant,

v.

PREISS ENTERPRISES, INC.; JACOB
PETERSON,

      Defendants–Appellees.

No. 12-8039
(D.C. No. 2:10-CV-00242-NDF)
(D. Wyo.)

**ORDER AND JUDGMENT**[*]

Before **LUCERO**, **MURPHY**, and **MATHESON**, Circuit Judges.

Megan McCafferty appeals from the district court's grant of summary judgment in

favor of Preiss Enterprises, Inc. d/b/a McDonald's ("Preiss") and Jacob Peterson.

Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

**I**

In February 2007, McCafferty submitted an employment application to Preiss,

---

[*] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel.  This court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 32.1.

operator of a McDonald's franchise restaurant in Cheyenne, Wyoming. McCafferty was fifteen years old at the time, although she indicated on her application that she was sixteen.

Preiss hired McCafferty as a crew member on February 15, 2007. During McCafferty's employment with Preiss, she sometimes worked with Peterson, who was twenty-one years old at the time. Peterson was a "shift leader" or "shift manager" at the restaurant, and participated in the "Manager-in-Training" program. In his position as shift leader/shift manager/manager-in-training, Peterson directly oversaw the work of crew members. He was responsible for directing the day-to-day activities of employees by assigning them to specific duties (e.g., cash register or deep fryer), and scheduling breaks during shifts. Peterson could request that a crew member cover another employee's shift when necessary, authorize a crew member to stay on the clock past their scheduled shift, and send an employee home before the end of a shift if the restaurant was overstaffed. According to Long, individuals in Peterson's position were "authorized to a certain degree to impose direct formal discipline upon a crew member," such as by "writing up an employee for employee misconduct, or making an employee clock out early due to employee misconduct." They also have a "significant amount of influence or say" in hiring, firing, and promotion decisions. However, the parties agree that Peterson lacked the authority to hire, fire, promote, demote, or transfer employees.

On March 26, 2007, Peterson, McCafferty, and Long were all working at the Preiss restaurant. In Long's affidavit, she states that Peterson was the employee with the

highest level of authority in the store on that date. McCafferty testified in her deposition that during her shift on March 26, a manager named Kelly asked her to cover a shift the following day. However, the only Preiss management employee named Kelly was on maternity leave on March 26. Long averred that she "was aware that Peterson asked McCafferty if she would be available to cover a shift" on March 27. In any event, McCafferty indicated to someone that she could work on that date, but would need a ride from school. Although not scheduled to work on March 27, Peterson agreed to pick up McCafferty from school and drive her to the restaurant.

The following day, Peterson arrived at McCafferty's school while she was still in class. He went to the front office and arranged to check her out of class early. Peterson offered McCafferty marijuana and after they smoked the marijuana, they went to get something to eat. When McCafferty reminded Peterson that she had to go to work, he said that she had been excused from her shift and asked if she wanted to hang out. McCafferty agreed to go to the home of a friend of Peterson's, where Peterson provided McCafferty with alcohol, methamphetamine and other drugs. They later went to Peterson's house, where he provided her with more alcohol and drugs. McCafferty reports that she does not remember going in to the bedroom, but at one point they ended up there and had sex. McCafferty's grandfather reported her as a runaway on March 27.

McCafferty remained with Peterson for the next two days. He continued to provide her with alcohol and drugs and to engage in in sexual activities with her. McCafferty was scheduled to work at the Preiss restaurant on March 28, 30, and 31, but

did not report to work or call. Dion Martin, another shift leader at the Preiss restaurant, testified that the "scuttle" among employees was that Peterson and McCafferty were together. Martin later heard from an employee of the drug use and other activities between Peterson and McCafferty.

On March 29, McCafferty's sister saw her, pulled her from Peterson's car, and contacted the police. Peterson was charged with possession of marijuana and methamphetamine. Police contacted Martin as part of their investigation. McCafferty was taken to a hospital psychiatric ward, and later to the Wyoming Behavioral Institute ("WBI"). She received in-patient treatment at WBI from April 3 to June 4, 2007 for depressive disorder, post-traumatic stress disorder, and drug dependence. McCafferty did not contact anyone at Preiss regarding these events. Preiss treated McCafferty as having voluntarily quit.

In September 2007, McCafferty filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). A copy of the charge was forwarded to Preiss. After being issued a right-to-sue letter by the EEOC, McCafferty filed suit in federal court asserting claims under Title VII and state law against Preiss and Peterson. The district court granted summary judgment in favor of both defendants as to McCafferty's federal claims, and in favor of Preiss on the state law claims. McCafferty then voluntarily dismissed her state law claims against Peterson and timely appealed.

**II**

We review a grant of summary judgment de novo, applying the same standards as

the district court.  Taylor v. Roswell Indep. Sch. Dist., 713 F.3d 25, 34 (10th Cir. 2013).

Summary judgment is appropriate if "the movant shows that there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R.

Civ. P. 56(a).  In making this determination, "we draw all reasonable inferences from the

evidence in favor of . . . the nonmoving party."  Taylor, 713 F.3d at 34 (quotation

omitted).

## A

"Title VII of the Civil Rights Act of 1964 makes it 'an unlawful employment

practice for an employer . . . to discriminate against any individual with respect to his

compensation, terms, conditions, or privileges of employment, because of such

individual's race, color, religion, sex, or national origin.'"  Harris v. Forklift Sys., Inc.,

510 U.S. 17, 21 (1993) (quoting 42 U.S.C. § 2000e-2(a)(1)).  It bars employers from

"requiring people to work in a discriminatorily hostile or abusive environment" that is

"permeated with discriminatory intimidation, ridicule, and insult . . . sufficiently severe

or pervasive to alter the conditions of the victim's employment."  Id. (quotation omitted).

However, "[e]mployers are not automatically liable for harassment perpetrated by

their employees."  Hollins v. Delta Airlines, 238 F.3d 1255, 1258 (10th Cir. 2001)

(citation omitted).  As the Supreme Court recently explained, "[i]f the harassing

employee is the victim's co-worker, the employer is liable only if it was negligent in

controlling working conditions."  Vance v. Ball State Univ., 133 S. Ct. 2435, 2439

(2013).  McCafferty does not assert a direct Title VII claim that Preiss was negligent in

-5-

failing to control working conditions; instead, she asserts two theories of vicarious

liability under Title VII.[1]

First, McCafferty claims that Peterson was a supervisor under Title VII and that he

took a tangible employment action against her. "A tangible employment action taken by

the supervisor" is generally treated "for Title VII purposes [as an] act of the employer."

Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 762 (1998). This is so because a

"tangible employment action" is "the means by which the supervisor brings the official

power of the enterprise to bear on subordinates." Id. at 762. It "requires an official act of

the enterprise, a company act." Id.

---

[1] Portions of McCafferty's brief on appeal could be read as arguing a direct Title VII claim based on employer negligence. However, it appears that these arguments are intended to rebut the first prong of an affirmative defense asserted by Preiss. See Faragher v. City of Boca Raton, 524 U.S. 775, 807 (1998) (employer may defend against claim of "hostile environment created by a supervisor . . . [w]hen no tangible employment action is taken" by showing "(a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise"). Because we conclude Peterson was not a supervisor, we do not reach this defense.

McCafferty's complaint and her response to Preiss' motion for summary judgment clearly relied on the theory that Preiss was liable because Peterson was a supervisor who committed a tangible employment action. And the second claim she asserted in her complaint plainly alleged that Preiss was "vicariously liable" based on Peterson's apparent authority as a supervisor. To the extent that McCafferty seeks to raise a claim of direct liability under the theory that Preiss negligently failed to prevent harassment, we consider such a claim waived. See Turner v. Pub. Serv. Co. of Colo., 563 F.3d 1136, 1143 (10th Cir. 2009) ("Absent extraordinary circumstances, we will not consider arguments raised for the first time on appeal.").

McCafferty did assert several state law negligence claims against Preiss, which are addressed in Part II.C, infra.

The district court noted a circuit split as to the proper test to determine whether an individual qualifies as a supervisor, and stated that the Tenth Circuit had not expressly adopted a position. The Supreme Court has now resolved the split by holding that

> an employer may be vicariously liable for an employee's unlawful harassment only when the employer has empowered that employee to take tangible employment actions against the victim, i.e., to effect a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.

Vance, 133 S. Ct. at 2443 (quotation omitted). In Vance, the Court relied on the Ellerth/Faragher framework under which the power to take tangible employment actions is a key difference between supervisors and non-supervisors. Id. at 2443-44. As the Court previously explained:

> A co-worker can break a co-worker's arm as easily as a supervisor, and anyone who has regular contact with an employee can inflict psychological injuries by his or her offensive conduct. But one co-worker (absent some elaborate scheme) cannot dock another's pay, nor can one co-worker demote another. Tangible employment actions fall within the special province of the supervisor. The supervisor has been empowered by the company as a distinct class of agent to make economic decisions affecting other employees under his or her control.

Ellerth, 524 U.S. at 762 (citations omitted).

The Vance Court rejected the EEOC's Enforcement Guidance, "which ties supervisor status to the ability to exercise significant direction over another's daily work." 133 S. Ct. at 2443. It held that the Court had never contemplated "two categories of supervisors: first, those who have [the authority to make tangible employment decisions] and, second, those who, although lacking this power, nevertheless have the

ability to direct a co-worker's labor to some ill-defined degree." Id. By narrowing the inquiry to whether the employee can affect tangible employment actions, the Court stated that the issue "can very often be resolved as a matter of law before trial." Id. at 2450.

Applying the Vance rule to the undisputed facts, it is clear that Peterson was not a supervisor for purposes of Title VII.[2] As McCafferty admits, Peterson did not have the power to hire, fire, promote, demote, or transfer employees. His power to direct the day-to-day assignments of crew members is precisely the type of "direction over another's daily work" or "ability to direct a co-worker's labor" that the Court rejected as forming the basis of supervisory status in Vance. 133 S. Ct. at 2443. And although Peterson could ask an employee to cover an extra shift, stay beyond a scheduled shift, or send an employee home early in limited circumstances, these actions do not constitute "a significant change in benefits." Id. at 2456 (emphasis added).

The Supreme Court in Vance left open the possibility that a supervisor's power to make tangible employment decisions may be imputed to a subordinate if an employer "attempt[s] to confine decisionmaking power to a small number of individuals" with "a limited ability to exercise independent discretion when making decisions," and who accordingly must "rely on other workers who actually interact with the affected

---

[2] When the Supreme Court applies a rule of law to the case before it, "that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate [the] announcement of the rule." Harper v. Va. Dep't of Taxation, 509 U.S. 86, 97 (1993).

-8-

employee." Id. at 2452.  And although, according to Long, individuals in Peterson's position had the "authority to make decisions that may have a significant" impact on tangible employment actions, we do not view this generalized statement as sufficient to create a genuine dispute as to whether he was a supervisor.  If mere influence in tangible employment decisions rendered a co-worker a supervisor, this exception would swallow the rule.  Unlike the "off-site" manager who did not "interact with the affected employee" offered as an example in Vance, id. at 2462, the record demonstrates that the Preiss managers authorized to take tangible employment actions were present at the restaurant nearly every day.  Because Preiss management had more than a "limited ability to exercise independent discretion," id. at 2452, and because McCafferty has not shown that Peterson had anything more than the potential to influence that discretion, Preiss cannot be said to have "effectively delegated the power to take tangible employment actions to" Peterson, id.[3]

Preiss is thus not vicariously liable for Peterson's alleged harassment under Vance. However, McCafferty asserts a second basis for vicarious Title VII liability.  She claims that Preiss is responsible for Peterson's actions under general agency principles because Peterson "acted with apparent authority or was aided in violating the statute by virtue of

---

[3] Our circuit has recognized a similar theory of "subordinate bias" or "cat's paw" liability under Title VII.  See EEOC v. BCI Coca-Cola Bottling Co., 450 F.3d 476, 486-87 (10th Cir. 2006).  To prevail on such a claim, "a plaintiff must establish more than mere 'influence' or 'input' in the decisionmaking process."  Id. at 478.

[his] agency relationship with the employer." Wright-Simmons v. City of Okla. City, 155 F.3d 1264, 1269-70 (10th Cir. 1998). It is unclear whether this theory of liability applies to non-supervisors. See id. at 1269 (stating that this test is used "to determine whether an employer is liable for a hostile work environment created by a supervisor"). Assuming that a non-supervisory employee's conduct may be imputed to the employer under this theory, McCafferty's claim nevertheless fails.

The above-quoted test derives from the Restatement (Second) of Agency, which provides that a "master is not subject to liability for the torts of his servants acting outside the scope of their employment, unless . . . the servant purported to act or to speak on behalf of the principal and there was reliance upon apparent authority, or he was aided in accomplishing the tort by the existence of the agency relation." Ellerth, 524 U.S. at 758 (quoting Restatement (Second) of Agency § 219(2)(d)). As the Supreme Court explained, however, this standard cannot be mechanistically applied in the Title VII context:

> Proximity and regular contact may afford a captive pool of potential victims. Were this to satisfy the aided in the agency relation standard, an employer would be subject to vicarious liability not only for all supervisor harassment, but also for all co-worker harassment, a result enforced by neither the EEOC nor any court of appeals to have considered the issue. The aided in the agency relation standard, therefore, requires the existence of something more than the employment relation itself.

Id. at 760 (citations omitted).

McCafferty argues that Peterson used his apparent authority to aid in the commission of his harassment by arranging to pick her up from school and by purporting

to excuse her from her shift.  These actions assuredly afforded Peterson proximity to his victim, but McCafferty has not presented evidence of "something more" as required by Ellerth.  Id.  Instead, Peterson's sexual advances, which occurred outside the workplace, could just as easily have been committed by any individual with proximity to McCafferty regardless of employment with Preiss.  McCafferty accordingly has not advanced sufficient evidence to rise to the level of a material dispute as to whether Preiss is liable under an "aided in the agency relation" theory.  Id.

For the foregoing reasons, we agree with the district court that summary judgment in favor of Preiss was proper on McCafferty's Title VII claims.

**B**

As to McCafferty's federal claims against Peterson, we have held that Title VII "statutory liability is appropriately borne by employers, not individual supervisors." Haynes v. Williams, 88 F.3d 898, 901 (10th Cir. 1996).  The district court granted Peterson's motion for summary judgment on this basis, and McCafferty does not address any briefing to Peterson's individual liability.  She has accordingly waived review of these claims.  See Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 679 (10th Cir. 1998) ("Arguments inadequately briefed in the opening brief are waived . . . .").

**C**

McCafferty also appeals the dismissal of her state law claims against Preiss.  She alleges that Preiss was negligent in hiring, supervising, and retaining Peterson, and that Preiss ratified Peterson's actions.

-11-

To prevail on a negligent hiring claim, a plaintiff must show that the employer was "negligent or reckless . . . in the employment of improper persons or instrumentalities in work involving the risk of harm to others." Cranston v. Weston Cnty. Weed & Pest Bd., 826 P.2d 251, 258 (Wyo. 1992) (quoting Restatement (Second) of Agency § 213)). We agree with the district court that McCafferty has not advanced any evidence suggesting that Preiss was negligent or reckless in hiring Peterson. The record does not contain any indication that Peterson was an "improper person[]" who posed a "risk of harm to others" at the time he was hired.

McCafferty also cites to Restatement (Second) of Agency § 213 as setting forth the standard for a negligent supervision claim. However, that provision applies only when an employer is "conducting an activity through servants or other agents." Id. If the conduct at issue occurred while an employee was "acting outside the scope of his employment," Wyoming courts look to Restatement (Second) of Torts § 317. See Shafer v. TNT Well Serv., Inc., 285 P.3d 958, 962 (Wyo. 2012) (quotation omitted). Under that provision, an employer has a duty to exercise reasonable care in supervising an employee only if the employee: "(i) is upon the premises in possession of the [employer] or upon which the [employee] is privileged to enter only as his [employee], or (ii) is using a chattel of the [employer]." Id. (quoting Restatement (Second) of Torts § 317(a)). "The conduct of an employee is within the scope of his employment only if it is of the kind he is employed to perform; it occurs substantially within the authorized time and space limits; and it is actuated, at least in part, by a purpose to serve the master." Killian v.

-12-

Caza Drilling, Inc., 131 P.3d 975, 979 (Wyo. 2006) (quotation omitted).

The district court correctly concluded that the undisputed evidence establishes Peterson was not acting within the scope of his employment when the sexual misconduct occurred. See Boyer-Gladden v. Hill, 224 P.3d 21, 29-30 (Wyo. 2010) (holding "it would be absurd to even suggest" that the sexual assault of an inmate was within the scope of a deputy's duties); Kanzler v. Renner, 937 P.2d 1337, 1345 (Wyo. 1997) ("[T]he sexual misconduct alleged . . . cannot be within the scope of any public officer's duties.").[4] And because McCafferty testified that Peterson did not engage in any inappropriate behavior on Preiss premises and there is no allegation that Peterson used Preiss chattel, McCafferty's negligent supervision claim fails as a matter of law. See Shafer, 285 P.3d at 962.

McCafferty does not identify any Wyoming cases recognizing a negligent retention claim. She also fails to direct any specific argument to this allegation. She cites Restatement (Second) of Agency § 213 as providing the standard for both negligent supervision and negligent retention claims. However, as noted above, that section does not apply when an employee is acting outside the scope of employment. Absent meaningful briefing on this issue, we deem it waived. See Adler, 144 F.3d at 679.

---

[4] To the extent that McCafferty argues Preiss is liable for the state law torts alleged against Peterson under a theory of respondeat superior, this argument fails for a similar reason. "Under the respondeat superior theory, an employer is liable for the negligence of an employee acting within the scope of his employment." Austin v. Kaness, 950 P.2d 561, 563 (Wyo. 1997).

-13-

Finally, McCafferty argues that Preiss is vicariously liable because it ratified Peterson's actions. Under Wyoming law, the party asserting ratification "must show that the principal intended to ratify" the actions and did so with "full knowledge at the time of the ratification of all material facts and circumstances relating to the unauthorized act or transaction." McConnell v. Dixon, 233 P.2d 877, 891 (Wyo. 1951). In Campen v. Stone, 635 P.2d 1121 (Wyo. 1981), the court held that "mere failure to dismiss a servant, unaccompanied by conduct indicating approval of the wrongful conduct, is not sufficient basis" to establish ratification. Id. at 1126 (citing Restatement (Second) of Agency § 217C, cmt. b). McCafferty claims that Preiss continued to employ Peterson, and even promoted him after the events at issue. However, McCafferty has not offered evidence that would allow a jury to conclude that Preiss acted with full knowledge of the events or indicated approval of Peterson's conduct. At best, the facts cited by McCafferty suggests that other shift managers, rather than the individuals responsible for making promotion decisions, were aware of Peterson's actions and that upper management knew of an investigation.

### III

For the foregoing reasons, we **AFFIRM** the judgment of the district court. McCafferty's motion to abate pending Vance is **DENIED** as moot. Her motion for leave to file supplemental briefing and leave to file late amicus briefing is **GRANTED IN PART AND DENIED IN PART**. We accept the supplemental brief attached to

-14-

McCafferty's motion as filed, but deny her request for additional time for amicus briefing.

Entered for the Court


Carlos F. Lucero
Circuit Judge