# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 26, 2008

Charles R. Fulbruge III
Clerk

No. 08-60136
Summary Calendar

VERONICA WILLIAMS

Plaintiff-Appellant

V.

BARNHILL'S BUFFET INC.

Defendant-Appellee

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 2:06-CV-148

Before JONES, Chief Judge, and CLEMENT and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

Veronica Williams appeals the district court's order granting summary judgment to her former employer on her Title VII sexual harassment claims. We AFFIRM.

## I.

Williams worked as a waitress at Barnhill's Buffet, Inc. ("Barnhill's") in Hattiesburg, Mississippi from June 2004, until January 2005. Williams alleges

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

that her immediate supervisor, Assistant Manager Randy Taylor, made unwelcome sexual comments and advances during her tenure at Barnhill's. The first incident took place in July 2004, when Williams and Taylor were in the back storage room of the restaurant. In Williams's words, Taylor "grabbed me by my apron, closed his eyes, and stuck his tongue down my mouth." Williams states that she fled the storage room in tears.

A few weeks later, Taylor allegedly grabbed Williams and pulled her head toward his lap, saying "I can tell by your lips that you do that well." Williams told two other servers about the incident, but did not report Taylor's conduct to any manager or corporate representative of the company.

In August 2004, Williams attended an orientation and sexual harassment workshop conducted by Barnhill's corporate representatives. The training included an educational video about sexual harassment in the workplace. At the close of the session, Williams signed a form acknowledging that she had read the anti-harassment policy and understood that sexual harassment was to be reported to a manager or corporate representative. Though she had the opportunity to meet personally with corporate representatives that were on site for the training, Williams did not inform them of Taylor's previous harassment.

By mid-August, Williams states that Taylor began to retaliate against her for rejecting his advances. Williams avers that Taylor would routinely assign her to "the bad sections" of the restaurant where she would earn less in tips. She also claims that she was the only waitress Taylor required to wash the wall where servers dumped food.

On January 20, 2005, Williams went into Taylor's office to pick up her check. According to Williams, Taylor turned off the restaurant's security camera and locked the door. He attempted to kiss her, tried to force his legs between hers, and tried to unbutton her pants.

2

After this incident, Williams "decided to get [] another job and just leave it alone." She met with Barnhill's general manager, Von Nelson, and resigned. When asked why she had decided to leave, Williams recounted Taylor's behavior. Barnhill's immediately placed Taylor on suspension and questioned potential witnesses. Barnhill's also reviewed the footage from the restaurant's security camera, which corroborated Williams's story. On February 2, 2005, Barnhill's terminated Taylor for misconduct involving the company's anti-harassment and security policies.

In February 2005, Williams filed a charge of sex discrimination, retaliation, and harassment with the EEOC. She subsequently filed suit under Title VII against Barnhill's and Randy Taylor. Taylor was dismissed from the suit on August 1, 2007. The district court granted Barnhill's motion for summary judgment on January 8, 2008. Williams appeals.

## II.

We review a district court's grant of summary judgment de novo. LeMaire v. La. Dep't of Transp. and Dev., 480 F.3d 383, 386 (5th Cir. 2007). Summary judgment is appropriate when, after considering the pleadings, discovery and disclosure on file, along with any affidavits, there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). A genuine issue of material fact exists if the summary judgment evidence is such that a reasonable jury could return a verdict for the non-movant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). All facts and evidence must be taken in the light most favorable to the non-movant. LeMaire, 480 F.3d at 387.

In evaluating a claim of sexual harassment under Title VII, courts must first determine whether the complaining employee has suffered a "tangible employment action." See Casiano v. AT&T Corp., 213 F.3d 278, 283 (5th Cir. 2000). If she has, her suit is classified as a "quid pro quo" case; if she has not,

her suit is classified as a "hostile environment" case. Id. This distinction makes a difference. An employer that is held vicariously liable for "quid pro quo" harassment is not permitted to advance the affirmative defense enunciated by the Supreme Court in Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 118 S. Ct. 2257 (1998) and Faragher v. City of Boca Raton, 524 U.S. 775, 118 S. Ct. 2275 (1998). Casiano, 213 F.3d at 283-84. In contrast, an employer that is found to have maintained a "hostile work environment" may assert the Ellerth/Faragher affirmative defense. Id. at 284.

The district court determined that Williams had not suffered a "tangible employment action," and thus could not advance a quid pro quo claim. Analyzing her claim as one of hostile work environment, the court determined that Barnhill's had satisfied the elements of the Ellerth/Faragher affirmative defense and granted summary judgment on this basis.

## A. Tangible Employment Action

Williams first challenges the district court's finding that she did not suffer a "tangible employment action." Williams asserts that Taylor's retaliation, which consisted of assigning her to "the bad sections" of the restaurant and requiring her to wash the wall where servers dumped food, amounted to a tangible employment action. We disagree. The Supreme Court has defined a "tangible employment action" as "a significant change in employment status such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." Ellerth, 524 U.S. at 761, 118 S. Ct. at 2268. An employee does not suffer a tangible employment action when a supervisor merely "change[s] her work schedule and ask[s] her to perform tasks which she had not previously been asked to perform." Watts v. Kroger Co., 170 F.3d 505, 510 (5th Cir. 1999). Because the job duties of a server at Barnhill's indisputably include some

janitorial work, requiring Williams to wash the wall where servers dumped food was not a tangible employment action.

Williams argues that her assignment to "the bad sections" of the restaurant amounted to a tangible employment action because it reduced the amount she earned in tips. However, Williams has not directed this court to any evidence that she earned less in tips because of Taylor's section assignments. Unsupported, conclusory speculation is insufficient to create a genuine issue of material fact. See Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994).

Williams also contends that she suffered a tangible employment action because she was constructively discharged. In certain circumstances, a constructive discharge can be considered a tangible employment action. Aryain v. Wal-Mart Stores Texas LP, ___ F.3d ___, 2008 WL 2655792, at *4 (5th Cir. July 8, 2008). However, even assuming that Williams properly raised her claim of constructive discharge,[1] she has nevertheless failed to submit evidence that would allow a reasonable jury to find that a constructive discharge occurred.

To establish constructive discharge, an employee "must offer evidence that the employer made the employee's working conditions so intolerable that a reasonable employee would feel compelled to resign. Brown v. Bunge Corp., 207 F.3d 776, 782 (5th Cir. 2000) (quoting Barrow v. New Orleans Steamship Ass'n, 10 F.3d 292, 297 (5th Cir. 1994)). The reasonableness of a plaintiff's decision is measured by an objective test. Hunt v. Rapides Healthcare Sys., LLC, 277 F.3d 757, 772 (5th Cir. 2002). Williams did not complain about Taylor's behavior until after she resigned, and she decided to resign before Barnhill's had notice of his misconduct. Barnhill's had no opportunity to correct her situation.

---

[1] Barnhill's argues that Williams has not administratively exhausted her constructive discharge claim and that she did not properly plead constructive discharge in her complaint. We do not address these arguments because it is apparent that Williams has not raised a factual issue as to whether she was constructively discharged.

An employee who resigns without affording the employer a reasonable opportunity to address her concerns has not been constructively discharged. See Woods v. Delta Beverage Group, Inc., 274 F.3d 295, 301 (5th Cir. 2001) (for purposes of the constructive discharge analysis, a reasonable employee would have reported the sexual harassment before resigning); see also Boze v. Branstetter, 912 F.2d 801, 805 (5th Cir. 1990) (holding that, in most cases, a reasonable employee would pursue internal remedies or file an EEOC complaint before resigning).

Because Williams did not suffer a tangible employment action or constructive discharge, the district court did not err in granting summary judgment on Williams's quid pro quo claim.

### B. Ellerth/Faragher Affirmative Defense

Williams argues that if her suit is properly analyzed as a hostile environment claim, Barnhill's has failed to establish the elements of the Ellerth/Faragher affirmative defense. We assume arguendo that Taylor's conduct created a hostile work environment. To establish this affirmative defense, Barnhill's must show by a preponderance of the evidence "(a) that [it] exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to avoid harm otherwise." Ellerth, 524 U.S. at 765, 118 S. Ct. at 2270; Faragher, 524 U.S. at 807, 118 S. Ct. at 2293.

We agree with the district court that Barnhill's has satisfied both prongs of the Ellerth/Faragher defense as a matter of law. On the first prong, Barnhill's presented ample evidence that it exercised reasonable care to prevent Taylor's harassing behavior. The company regularly conducted training for its employees on the anti-harassment policy. Taylor stated in an affidavit that he received training on Barnhill's anti-harassment policy as a part of his orientation to the

company. Approximately one year after this initial orientation, Taylor again received training regarding the anti-harassment policy and the handling of sexual harassment complaints.

Barnhill's also took prompt remedial action after Williams reported Taylor's misconduct. Barnhill's immediately suspended Taylor and began an internal investigation. Barnhill's interviewed several witnesses and reviewed tapes from the restaurant's security camera. Taylor was fired within days of when Williams reported his assault. Further, Barnhill's management made it clear to Williams that if she chose to stay, she would never be asked to work with Taylor again and informed her that he had been terminated. Barnhill's actions satisfy the first prong of the defense. See Williams v. Admin. Rev. Bd., 376 F.3d 471, 479 (5th Cir. 2004); Cerros v. Steel Tech., Inc., 398 F.3d 944, 953 (7th Cir. 2005).

Barnhill's also demonstrated that Williams unreasonably failed to take advantage of the preventive or corrective opportunities the company provided. Within two months of her hire, Williams took part in an anti-harassment training session at the restaurant during which corporate representatives explained the anti-harassment policy in detail — including the proper procedure for employees to report harassment. Williams signed a form acknowledging that she had read the policy and understood the company's reporting requirements. Williams had the opportunity to meet personally with corporate representatives of Barnhill's during the training, but she chose not to notify them of Taylor's previous harassment. Indeed, she did not inform any corporate representative or manager about Taylor's conduct until the day she resigned. Although Williams did confide in two fellow servers about her encounters with Taylor, these informal complaints to co-workers were insufficient to put Barnhill's on notice of the need to address Taylor's behavior. The district court did not err in concluding that Barnhill's has satisfied the Ellerth/Faragher affirmative defense.

III.

For these reasons, the judgment of the district court is AFFIRMED.