# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

September 27, 2013

No. 12-51050

Lyle W. Cayce
Clerk

TENISHA GIDDENS,

Plaintiff-Appellant

v.

COMMUNITY EDUCATION CENTERS, INC., doing business as
ECTOR COUNTY CORRECTIONAL CENTER

Defendant-Appellee

Appeal from the United States District Court
for the Western District of Texas
USDC No. 7:11-CV-10

Before WIENER, DENNIS, and OWEN, Circuit Judges.

PER CURIAM:[*]

Petitioner-Appellant Tenisha Giddens ("Giddens") appeals the district court's grant of summary judgment in favor of her former employer, defendant-appellee Community Education Centers, Inc. ("CEC"), against whom Giddens had brought a Title VII lawsuit of sexual discrimination and retaliation. We affirm.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-51050

## I. Facts and Procedural History

Giddens was hired as a Correctional Officer at the Ector Correctional Center ("ECC") in Odessa, Texas in 2005. She was hired by Warden Jack Brewer ("Brewer") while the ECC was managed by CiviGenics, Inc. In 2007, CEC took over management of the facility. Brewer and Giddens stayed on as CEC employees. At the time that CEC took over management of the facility, it distributed the employee handbook to its staff, including Giddens. The handbook included a section on sexual harassment. It prohibited sex-based discrimination by any employee, and explained that allegations of discrimination, including sexual harassment, would be subject to investigation. The policy further provided that an employee who believes she has been subject to sexual harassment

> should report the incident(s) immediately to his or her immediate supervisor, who will report the incident to the Director of Employee Relations or corporate representative. If the employee is not comfortable reporting the matter through the proper chain of command, then the employee should feel free to report the matter directly to the Director of Employee Relations. The employee shall make a written record of the date, time and nature of the incident(s) and the names of any witnesses. The director of Employee Relations will proceed to conduct a prompt and confidential investigation of the alleged incident(s) that shall include interviews of the complainant, the alleged harasser and any potential witness(es).

When the handbook was distributed, Giddens signed an acknowledgment that she received, reviewed, and understood the policies.

Giddens received several raises while she was employed by CEC. She was promoted to corporal in 2009. Soon thereafter, she was given the opportunity to sit for the exam she needed to take in order to qualify as a full-time sergeant. She did not take the exam. Richard Aguilar ("Aguilar"), an outside candidate,

No. 12-51050

was given the position of sergeant and began working as Gidden's supervisor in 2009.

Giddens testified in her deposition and stated in her Declaration that soon thereafter, in May 2009, Aguilar began making unwelcome sexual advances toward her. Aguilar asked her to go out for drinks on three occasions. On one occasion, he pulled her by the waist onto his lap and told her he wanted to "uh" her in a suggestive voice that suggested he was referring to sex. Aguilar yelled at her and at male co-workers who spoke with Giddens while they were on shift, and referred to these co-workers as Giddens' boyfriends. He also told her numerous times that if she would take care of him, he would take care of her, which Giddens took to refer to sexual favors. Aguilar was flirtatious and "touchy" with her. On a nearly daily basis, Aguilar followed Giddens around and often touched her back and hips, even while prisoners were present. This behavior prompted several prisoners to ask Giddens if she was in a relationship with Aguilar. Giddens also asserted that Aguilar told the prisoners personal details about her life. Then, in August 2009, after her consistent rejection of his advances, Aguilar's harassment of Giddens changed. He began to make frequent derogatory and profane remarks about Giddens and women in general. He consistently addressed her as "woman" rather than as "Corporal" or by her name. He repeatedly grabbed her, once hard enough that it left bruises on her arm, and cursed her. Aguilar removed Giddens from supervisory duties and reassigned her to cleaning tasks and other duties that were usually assigned to employees subordinate to Giddens. He regularly informed her that women had no place working in corrections. The harassment continued until Giddens was placed on leave and ultimately terminated on October 29, 2009.

3

No. 12-51050

Giddens did not report the incidents of harassment or keep a written record of them. Giddens asserted that on one occasion, she complained to Assistant Warden Linvel Mosby ("Mosby") that Aguilar was swearing at her, that he told lies about her, and that he was trying to get her fired because she "wouldn't be with him." She made her complaint under CEC's Open Communications/Problem Resolution procedure, which directs an employee to "immediately seek the help of their supervisor" when a problem arises. Although Giddens stated in her sworn Declaration that she told Mosby that she thought Aguilar was mistreating her because she would not date him, she acknowledged that she did not tell Mosby that Aguilar was harassing her or that he had made sexual advances toward her.

On October 1, 2009, Giddens requested three days of leave to attend a U.S. Marshal's Seminar in Dallas, Texas. Brewer denied Giddens's request because Aguilar and Mosby informed him that Giddens had not accrued sufficient leave time for all three days. Giddens then requested permission to take one day off to attend the conference on the day that she could interview for a Marshal position. She had accrued sufficient leave time (14.24 hours) to take off one day of work. However, Aguilar informed Brewer that Giddens had not accrued sufficient leave time to take one day off and on that basis, Brewer denied Giddens's request. The parties dispute whether Aguilar informed Giddens that Brewer denied her request for one day's leave time. Giddens asserted that she believed that her request had been approved, and therefore took the day off of

4

No. 12-51050

work to attend the interview. She then was one hour late for her next shift on October 22, 2009.[1]

When she arrived for her shift, Aguilar told her that she was relieved of duty and to report to Brewer at 8:30 a.m. the following day. At the meeting, Brewer informed Giddens that her leave request had been denied and that she therefore failed to report to work without permission. Brewer also told Giddens that she was being placed on administrative leave pending an investigation. Brewer delegated two employees to conduct the investigation, Sergeant Michael Ashabranner ("Ashabranner") and Compliance Officer Brandon Mangus ("Mangus"). Ashabranner and Mangus interviewed ten of Giddens's co-workers who worked on Giddens's shift. The investigators produced a written report of each interview, signed by the employee. All but one of the co-workers told the investigators that Giddens was insubordinate toward Aguilar, resentful of Aguilar, negative about CEC, disrespectful toward the prisoners, that she sometimes left her post, and that the shift ran more smoothly when she was absent. At the bottom of each report, Ashabranner and Mangus indicated that Giddens's behavior violated CEC's Code of Ethics Policy. In an interoffice memorandum written on October 28, 2009, Brewer reviewed the results of the investigation. He noted that he gave Giddens permission to submit a list of employees and ex-employees to be interviewed about her character and integrity, but that Giddens failed to produce the list. He explained that Ashabranner and

---

[1] Around this time, the defendants asserted that another junior correctional officer, Cindy Faulk, submitted a written statement complaining that Giddens attempted to intimidate her and had bad-mouthed Sergeant Aguilar. However, Giddens asserted that she did not intimidate Faulk and only warned her to be on guard against Aguilar's advances and harassment. The parties dispute whether this statement was taken before or after Giddens's suspension.

No. 12-51050

Mangus interviewed all the employees on Giddens's shift and that they reported that Giddens violated the CEC Code of Ethics Policy on numerous occasions. The violations included: insubordination toward Aguilar, her supervisor; failure to perform work as directed; unwillingness to work in harmony with other employees; being dogmatic and escalating hostility toward the prisoners; negligence of duty and work assignments; inexcusable absenteeism; making derogatory statements about other employees; leaving the work station without direction of her supervisor; and advising staff not to perform duties assigned by the supervisor. Brewer's letter also identified four days on which Giddens had been absent without excuse, not including October 21, 2009.

On October 29, 2009, Brewer wrote another interoffice memorandum that indicated that he met with Giddens at 9:00 a.m. on October 29, 2009 to review the results of the investigation. According to the memorandum, Giddens informed him that she would not submit a list of ex- and current employees to be interviewed on her behalf. At the meeting, Brewer terminated Giddens's employment "because of the habitual abuse of policy" and "being absent without a justifiable excuse."

After she was fired, Giddens filed charges of discrimination with the Equal Employment Opportunity Commission (EEOC). After receiving notice of her right to sue, Giddens brought suit against CEC under Title VII, asserting a sex discrimination claim and a retaliation claim. On September 12, 2012, the district court issued an order ruling on both parties' objections to submitted summary judgment evidence, including *inter alia* CEC's motion to exclude Paragraph 8 of Giddens's Declaration from the summary judgment record on the grounds that it contradicted a judicial admission made in Giddens's Amended Complaint. The

6

No. 12-51050

district court granted CEC's motion and then granted CEC's motion for summary judgment and dismissed the case. Giddens now appeals the district court's exclusion of Paragraph 8 and its summary judgment order.

## II. Discussion

### A. Summary Judgment

### 1. Standard of Review

Giddens contends on appeal that the district court erred in granting summary judgment in favor of CEC. We review a district court's grant of summary judgment de novo, applying the same standard as the district court. *Addicks Servs., Inc. v. GGP-Bridgeland, LP*, 596 F.3d 286, 293 (5th Cir. 2010). We may affirm "on any ground supported by the record, even if it is different from that relied upon by the district court." *Janvey v. Democratic Senatorial Campaign Committee, Inc.*, 712 F.3d 185, 193 (5th Cir. 2013). Summary judgment is appropriate if the record shows that "there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In reviewing a grant of summary judgment, the Fifth Circuit examines the evidence in the light most favorable to the nonmoving party. *Addicks Servs., Inc.*, 596 F.3d at 293. The moving party bears the burden of demonstrating that summary judgment is appropriate. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

### 2. Harassment Claims

Pursuant to Title VII of the Civil Rights Act, it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to h[er] compensation, terms,

7

conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). A plaintiff seeking to hold an employer company liable for sexual harassment carried out by the plaintiff's supervisor may prevail in one of two ways: (a) by establishing that the sexual harassment resulted in a tangible employment action,[2] or (b) by establishing that the supervisor created a hostile work environment. *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998); *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998); *Casiano v. AT&T Corp.*, 213 F.3d 278, 283-84 (5th Cir. 2000). If a plaintiff has suffered a tangible employment action, the suit is classified as a "quid pro quo" case. *Casiano*, 213 F.3d at 283. If the plaintiff has not suffered a tangible employment action, the suit is classified as a hostile work environment case. *Id.* Giddens asserts that CEC is vicariously liable for Aguilar's sexual harassment under both theories.

### a. Quid Pro Quo

In a quid pro quo case, when the court has established that the plaintiff suffered a tangible employment action, "the court must determine whether the tangible employment action suffered by the employee resulted from [her] acceptance or rejection of [her] supervisor's alleged sexual harassment." *Id.* "When a plaintiff proves that a tangible employment action resulted from a refusal to submit to a supervisor's sexual demands, he or she establishes that the employment decision itself constitutes a change in the terms and conditions of employment that is actionable under Title VII." *Ellerth*, 524 U.S. at 753-54.

---

[2] A tangible employment action "requires an official act of the enterprise," and may be defined as "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761, 762 (1998).

No. 12-51050

"If the employee cannot show such a nexus, then his employer is not vicariously liable under Title VII for sexual harassment by a supervisor; but if the employee can demonstrate such a nexus, the employer is vicariously liable per se." *Casiano*, 213 F.3d at 283. "No affirmative defense is available [to the employer] when the supervisor's harassment culminates in a tangle employment action." *Ellerth*, 524 U.S. at 745; *see also Faragher*, 524 U.S. at 804-05.

Giddens's termination constituted a tangible employment action. She conceded, however, that she did not complain to Brewer about Aguilar's conduct and that Brewer did not know about the harassment before he made the decision to terminate her employment. Therefore, she can only establish the necessary nexus between the harassment and her termination under the "cat's paw" doctrine. In *Staub v. Proctor Hosp.*, 131 S. Ct. 1186 (2011), the Supreme Court held "that if a supervisor performs an act motivated by [discriminatory] animus that is intended by the supervisor to cause an adverse employment action, *and if that act is a proximate cause of the ultimate employment action*, then the employer is liable." *Id.* at 1194 (emphasis added).

Giddens has presented sufficient evidence to create a genuine issue of material fact as to whether Aguilar performed acts motivated by discriminatory animus and intended to cause an adverse employment action—specifically, by intentionally misrepresenting to Brewer that Giddens did not have sufficient leave-time accrued to take one day off of work, and by not informing her that Brewer denied her request for one day's leave time. However, Giddens has not demonstrated that Aguilar's acts proximately caused her termination. Brewer appointed two investigators, Ashabranner and Mangus, to investigate Giddens's behavior. Aguilar was not involved in the investigation. Ashabranner and

No. 12-51050

Mangus interviewed ten co-workers who were on Giddens'ss shift. Giddens co-workers told the investigators that Giddens was insubordinate toward Aguilar, and many of them also explained that Giddens regularly failed to perform work as directed, was unwilling to work harmoniously with her colleagues, failed to remain at her post, and encouraged her co-workers not to perform tasks that Aguilar assigned. The investigators noted that this behavior violated several CEC policies. Giddens did not provide Brewer with any information to counter the investigation results.

CEC presented uncontroverted evidence that Giddens was terminated because she regularly violated several CEC policies and had been inexcusably absent on numerous occasions. These violations were uncovered by two independent investigators. Nothing in the record indicates that Aguilar influenced the investigators or the outcome of the investigation. Under the cat's paw theory of liability, "if the employer's investigation results in an adverse action for reasons unrelated to the supervisor's original biased reaction . . . then the employer will not be liable." *Staub*, 131 S. Ct. at 1193. Because Giddens did not show that there is a genuine issue of material fact as to whether Aguilar's acts were the proximate cause of Brewer's decision to terminate her employment, she failed to sufficiently establish a quid pro claim under Title VII.

### b. Hostile Work Environment

Giddens also brought a hostile work environment claim against CEC. To establish a hostile work environment claim, an employee must establish a prima facie case, demonstrating that: (1) the employee belongs to a protected class; (2) the employee was subject to unwelcome sexual harassment; (3) the harassment was based on sex; and (4) the harassment affected a term, condition, or privilege

of employment. *Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 479 (5th Cir. 2008). "To affect a term, condition, or privilege of employment, the harassment 'must be sufficiently severe or pervasive to alter the conditions of [the victim's] employment and create an abusive working environment.'" *Id.* (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)). Once the employee has established all four elements, then the employer is liable unless the employer proves both prongs of the *Ellerth/Faragher* affirmative defense: "(a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Ellerth*, 524 U.S. at 765; *see also Faragher*, 524 U.S. at 807. "[T]his is the employer's only affirmative defense in a supervisor sexual harassment case post *Ellerth/Faragher*, and it is available *only* in a hostile environment situation." *Casiano*, 213 F.3d at 284 (emphasis added).

Even assuming that Giddens has established a prima facie case for her hostile environment claim, her appeal fails because CEC has proven that it is entitled to the *Ellerth/Faragher* defense as a matter of law. Where an employer has "provided a proven, effective mechanism for reporting and resolving complaints of sexual harassment, available to the employee without undue risk or expense," and the plaintiff "unreasonably failed to avail herself of the employer's preventative or remedial apparatus . . . no liability should be found against the employer who has taken reasonable care." *Faragher*, 524 U.S. at 807. CEC adduced summary judgment evidence that it has an established, well-developed policy against sexual harassment and a system for reporting any

harassment that occurs. The policy prohibits sex-based discrimination by any employee and subjects any allegations of discrimination to investigation. It provides that an employee who is being harassed should keep a written record of each incident of harassment. It also provides than an employee should report the harassment, and enables her to report directly to the Director of Employee Relations if she is not comfortable reporting to her supervisor. Once informed, the Director of Employee Relations is required to conduct a prompt, confidential investigation. CEC's sexual harassment policy was included in the CEC employee handbook, which was distributed to all employees, including Giddens. Giddens has not produced any evidence that CEC did not adhere to these policies in practice, or otherwise failed to exercise reasonable care to prevent and correct sexual harassing behavior.

Giddens admitted that she received the employee handbook that detailed this policy and that she signed an acknowledgment that she received, reviewed, and understood the policies. She also admitted that she never made a written record of the harassment or reported it, in part because she did not perceive Aguilar's behavior to be sexual harassment until after she had been terminated. Although Giddens did complain to Mosby about Aguilar's treatment of her through the CEC Open Communication/Problem Resolution procedure, she admitted that she did not tell Mosby that Aguilar was sexually harassing her. Giddens did not notify anyone at CEC about the harassment until after she was terminated, when she filed her EEOC charge. The uncontroverted summary judgment evidence demonstrates that Giddens unreasonably failed to take advantage of CEC's policies to prevent or correct Aguilar's sexual harassment.

No. 12-51050

Therefore, no liability should attach to CEC for Giddens's hostile work environment claim.

### 3. Retaliation Claim

Giddens also contends that the district court erred in granting summary judgment in favor of CEC on her retaliation claim. In her Amended Complaint, Giddens claimed that CEC retaliated against her for (1) refusing Aguilar's advances, (2) reporting Aguilar's unlawful conduct, and (3) filing a charge of unlawful discrimination. The *McDonnell Douglas* burden-shifting framework applies to Title VII claims brought under a pretext theory. *Septimus v. Univ. of Houston*, 399 F.3d 601, 608 (5th Cir. 2005). Under this approach, an employee must first produce evidence of a prima facie case of retaliation by demonstrating "that (1) [she] engaged in an activity that Title VII protects; (2) [she] was subjected to an adverse employment action; and (3) a causal connection exists between the protected activity and the adverse employment action." *LeMaire v. Louisiana Dept. of Transp. & Dev.*, 480 F.3d 383, 388 (5th Cir. 2007). "The proper standard of proof on the causation element of a Title VII retaliation claim is that the adverse employment action taken against the plaintiff would not have occurred 'but for' her protected conduct." *Septimus*, 399 F.3d at 608. Once the employee has established her prima facie case, "the burden shifts to the employer to state a legitimate, non-retaliatory reason for its decision." *LeMaire*, 480 F.3d at 388 (citing *Baker v. Am. Airlines, Inc.*, 430 F.3d 750, 754-55 (5th Cir. 2005)). "After the employer states its reason, the burden shifts back to the employee to demonstrate that the employer's reason is actually a pretext for retaliation." *Id.* at 388-89 (citing *Baker*, 430 F.3d at 755).

Giddens has not produced evidence sufficient to make a prima facie case of retaliation. With regard to her first contention, Giddens's claim fails because she did not provide any "authority for the proposition that rejecting sexual advances constitutes a protected activity for the purposes of a retaliation claim under Title VII." *Id.* at 389. Moreover, she could not establish a but-for causal connection between her rejection of Aguilar and Brewer's subsequent decision to terminate her after an investigation, which was not conducted by Aguilar, revealed that Giddens regularly violated several CEC Ethics Policy rules. With regard to her second and third contentions, Giddens did not report the unlawful conduct or file an unlawful discrimination charge until after her termination. Therefore, neither could be a but-for cause of her termination. Because Giddens failed to make a prima facie case for her retaliation claim, the district court did not err in granting summary judgment in favor of CEC.

## B. Evidentiary Ruling

Giddens also appeals the district court's evidentiary ruling excluding Paragraph 8 of her Declaration, in which she attested that

> I was never told I could not have that day off by Sgt. Aguilar or anyone else. It was approved as far as I knew. As shift Sergeant, Aguilar was routinely the person who an officer submitted a request for time off. The shift Sergeant would then check the hours available, approve it and send it on to the Assistant Warden. I know this because I was the acting Sergeant, in the spring of 2009, before Aguilar was given the position.

The district court sustained the defendants' objection to Paragraph 8 and excluded the paragraph from the summary judgment record on the grounds that Giddens was judicially estopped from making the assertions in Paragraph 8 because they contradicted the judicial admissions made in her Amended

No. 12-51050

Complaint. We review a district court's evidentiary rulings for abuse of discretion, subject to harmless-error analysis. *United States v. Meza*, 701 F.3d 411, 425 (5th Cir. 2012) (internal quotation marks and alteration omitted).

The district court erred in excluding Paragraph 8 because it is not inconsistent with or contrary to Giddens's Amended Complaint or with her EEOC charge, and therefore should not have been excluded under either the doctrine of judicial estoppel or the doctrine of judicial admissions.[3] *See Hopkins v. Cornerstone America*, 545 F.3d 338, 347 (5th Cir. 2008) (noting that the doctrine generally may be invoked only when, *inter alia*, "the party's position [is] clearly inconsistent with its previous one") (quoting *Hall v. GE Plastic Pac. PTE Ltd.*, 327 F.3d 391, 396 (5th Cir. 2003)); *Davis v. A.G. Edwards & Sons, Inc.*, 823 F.2d 105, 107-08 (5th Cir. 1987) (a party is bound by admissions made in his pleadings, such that he cannot present evidence contradicting those pleadings for the purpose of defeating a summary judgment motion). In her Amended Complaint, Giddens pleaded that Aguilar sexually harassed her and then, when

---

[3] The district court conflated two separate doctrines: the doctrine of judicial estoppel and the doctrine of judicial admissions. *See, e.g.*, *Colonial Refrigerated Transp., Inc. v. Mitchell*, 403 F.2d 541, 550 n.24 (distinguishing the doctrine of judicial estoppel from that of judicial admissions). "Judicial estoppel is an equitable doctrine that 'prevents a party from asserting a position in a legal proceeding that is contrary to a position previously taken in the same or some earlier proceeding.'" *Hopkins v. Cornerstone America*, 545 F.3d 338, 347 (5th Cir. 2008) (quoting *Hall v. GE Plastic Pac. PTE Ltd.*, 327 F.3d 391, 396 (5th Cir. 2003)). "A judicial admission is a formal concession in the pleadings or stipulations by a party or counsel that is binding on the party making them. Although a judicial admission is not itself evidence, it has the effect of withdrawing it from contention." *Martinez v. Bally's Louisiana, Inc.*, 244 F.3d 474, 476 (5th Cir. 2001). "[F]actual assertions in pleadings . . . are considered to be judicial admissions conclusively binding on the party who made them." *White v. ARCO/Polymers, Inc.*, 720 F.2d 1391, 1396 (5th Cir. 1983). A party therefore may not rebut a judicial admission made in its pleadings with new evidence or testimony. *See Davis v. A.G. Edwards & Sons, Inc.*, 823 F.2d 105, 107-08 (5th Cir. 1987).

she rejected his advances, "engaged in a pattern of behavior including derogatory and profane remarks about her gender and women in general, job assignments, aggressive physical contact, refusal of personal leave, and ultimately her discharge." In her EEOC charge, Giddens asserted that "[o]n or about October 20, 2009 I was denied personal leave, although I requested it about three weeks in advance." Neither admission is inconsistent with Paragraph 8 of her Declaration, in which she attested that "I was never told I could not have that day off by Sgt. Aguilar or anyone else. It was approved as far as I knew." Giddens applied for leave twice. On the first occasion, she applied for three days' leave and was denied because she had not accrued three days' worth of leave time. She then applied for one day of leave, for October 21, 2009. She had sufficient accrued leave time (14.24 hours) for one day of leave. When Giddens took a day off work on October 21, 2009, she believed that she had been granted leave because she had not been informed that her leave request was denied. Unbeknownst to her, Aguilar represented to Brewer that Giddens had insufficient leave time accrued and Brewer denied her leave request on that basis. Neither Aguilar nor Brewer communicated this to Giddens. Giddens only learned that Brewer denied her second leave request after she returned from her day of leave and was suspended from duty. Her assertions in Paragraph 8 of her Declaration and the admissions made in her EEOC charge and Amended Complaint therefore are consistent.

We do not reverse because the error was harmless. Paragraph 8 of Giddens's Declaration has no bearing on the proximate cause of her termination, on CEC's *Ellerth/Farragher* defense, or on Giddens's ability to establish a prima facie case of retaliation.

No. 12-51050

## CONCLUSION

For the aforementioned reasons, we affirm the district court's evidentiary ruling, its grant of summary judgment in favor of the defendant, and its dismissal of Giddens' Title VII action.


AFFIRMED.