# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 15-30871

United States Court of Appeals
Fifth Circuit

**FILED**

July 20, 2016

Lyle W. Cayce
Clerk

KANDICE PULLEN,

Plaintiff–Appellant,

versus

CADDO PARISH SCHOOL BOARD,

Defendant–Appellee.

Appeal from the United States District Court
for the Western District of Louisiana

Before SMITH, BARKSDALE, and COSTA, Circuit Judges.
JERRY E. SMITH, Circuit Judge:

Kandice Pullen, an employee of the Caddo Parish School Board, claimed that she was sexually harassed by Timothy Graham, another board employee, in violation of Title VII. Graham was Pullen's supervisor for certain periods of the alleged harassment, but Pullen claims that the harassment continued after she had transferred to a different department. The district court granted the board's motion for summary judgment, and Pullen appeals. We reverse the

No. 15-30871

summary judgment as to the period during which Graham was Pullen's supervisor and affirm as to the period during which he was not.

## I.

Pullen was hired as a temporary clerical employee and worked in the purchasing department at the central office for two spans of time. The first was from February 2011 until the end of June 2011; the second was from February 2012 until May 2012. Graham was her supervisor in the purchasing department. From May 2012 until the end of July 2012, she worked in the department of classified personnel (which is one of the board's two human resources ("HR") departments[1]), also in the central office. During that time, Pullen's supervisor was Cleveland White.

Pullen avers that Graham sexually harassed her during all three of these periods and at a lunch in October 2012. During the first period, Graham allegedly engaged in repeated verbal sexual harassment. During her second stint in the purchasing department, Pullen says that, in addition to frequent verbal harassment, Graham touched her thigh once and put his arm around her several times. On one occasion he also called her into his office and showed her inappropriate pictures of other women that he had stored on an external hard drive. Pullen further states that, after she moved to the classified personnel department (also located at the central office), Graham would come to the personnel department to talk to her; sometimes he would make inappropriate comments in the same vein as before.

Pullen did not contemporaneously tell anyone at the office about the harassment. But in late February 2013, another temporary clerical employee,

---

[1] The board had two separate HR departments, one for employees with a teaching certificate ("certified personnel") and one for those without ("classified personnel").

No. 15-30871

Aimee Harris, informed White (the head of classified personnel) and Mary Robinson (the board's chief of staff) that she wished to file a sexual-harassment complaint against Graham based on inappropriate remarks made during her first week on the job in the purchasing department. In Harris's written complaint, she detailed allegations similar to Pullen's. Harris's written complaint also identified Pullen as a person potentially subject to similar harassment from Graham.

The board placed James Woolfolk, its chief operations officer, in charge of investigating Harris's complaint and preparing a written report according to the board's standing procedures for investigation of sexual-harassment allegations. Woolfolk interviewed several people in the course of the investigation, including Harris and Pullen, concluding that Graham's conduct was not sexual harassment but was nonetheless unprofessional and inappropriate. He therefore recommended that Graham be suspended without pay for a week and required to undergo counseling. The board's superintendent agreed, and that punishment was imposed on April 4, 2013.

On March 6, 2013—during the pendency of Woolfolk's investigation—Pullen sent a letter complaint to the Equal Employment Opportunity Commission ("EEOC") detailing Graham's alleged harassment. On March 18, the EEOC contacted Pullen to confirm that she wanted to file a formal charge. On April 17, the EEOC mailed a draft charge of discrimination for her review and signature; she signed and returned it.

## II.

Pullen sued Graham and the board in state court on January 29, 2014, and the board removed. The suit claimed violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, for sex discrimination in the form

of sexual harassment.[2]  Pullen later amended to remove Graham as an individual defendant.  After discovery, the parties filed cross-motions for summary judgment.

The district court granted summary judgment for the board.  It agreed with the board that the sexual-harassment claim had to be analyzed under two distinct legal standards—one for the period in which Pullen worked in the purchasing department under Graham's supervision, and one for the later period.  Then, it rejected the board's contention that Pullen had not filed her EEOC complaint timely.[3]  The court then turned to the substance of the motion.

First, the district court addressed the period of harassment in which Graham was Pullen's supervisor.  It held that the board had established that there were no material factual disputes regarding its entitlement to judgment on its *Ellerth/Faragher* affirmative defense.[4]  The court held that the first prong of the test was satisfied because the board had put forward evidence that it had a detailed sexual-harassment policy that was posted on bulletin boards around the central office and was available online, and on which it trained the

---

[2] Pullen also asserted *quid pro quo* and retaliation claims, but she jettisoned them in her opposition to summary judgment.

[3] Timely filing an EEOC claim is a condition precedent to filing a Title VII claim in federal court, but it is not jurisdictional; therefore, ordinary waiver and abandonment principles control.  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 121 (2002).  The board does not press its timeliness argument on appeal, so it is waived under this court's normal principles of argument presentation and preservation.  *E.g.*, *Yohey v. Collins*, 985 F.2d 222, 224–25 (5th Cir. 1993).

[4] *See Burlington Indus. v. Ellerth,* 524 U.S. 742, 765 (1998); *Faragher v. City of Boca Raton,* 524 U.S. 775, 807 (1998).  The *Ellerth/Faragher* defense allows an employer to claim immunity from vicarious liability for a supervisor's sexual harassment if it establishes "(a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise."  *E.E.O.C. v. Boh Bros. Constr. Co.*, 731 F.3d 444, 462 (5th Cir. 2013) (en banc) (quoting *Watts v. Kroger Co.,* 170 F.3d 505, 509–10 (5th Cir.1999)).

majority of its employees on a regular basis.  The second prong was satisfied because Pullen's failure to report the alleged harassment for well over two years was unreasonable.

Second, the district court addressed the period of harassment during which Graham was not Pullen's direct supervisor.  It agreed with the board that Pullen had not put forth any evidence to indicate that management actually knew or should have known about the harassment.  Thus, the court granted summary judgment on the coworker-harassment claims.

## III.

Because there is a genuine dispute of material fact as to whether the School Board is entitled to immunity under the *Ellerth/Faragher* defense, we reverse the summary judgment in that regard.  Normally an employer is strictly liable for a supervisor's harassment of an individual whom he or she supervises. *Vance v. Ball State Univ.*, 133 S. Ct. 2434, 2439, 2442 (2013).  The *Ellerth/Faragher* affirmative defense is an exception and is available to employers where a plaintiff alleges sexual harassment by a supervisor but does not claim that the harassment resulted in a tangible employment action.  *Id.*

The defense has two elements.  First, the employer must show that it exercised reasonable care to prevent and correct sexual harassment.  Second, it must establish that the employee unreasonably failed to take advantage of preventive or remedial opportunities provided by the employer.  *See Boh Bros.*, 731 F.3d at 462.  The employer bears the burden of proving both elements by a preponderance of the evidence.  *Id.*  We conclude that the board did not meet its burden on the first element.

The first element focuses on the company's conduct.  The core of the dispute in this case concerns the principle that "[a]n employer can satisfy the first

prong of the *Ellerth/Faragher* defense by implementing suitable institutional policies and educational programs regarding sexual harassment." *Id.* at 462–63.[5] Both the harasser's knowledge of the policy and the victim's awareness of it (and of associated complaint procedures) are relevant to whether the company acted reasonably.[6]

The issue is whether the evidence adduced on summary judgment was sufficient to demonstrate that the board took reasonable care to prevent sexual harassment through promulgation of a policy and complaint mechanism. The cases addressing whether a company has satisfied its burden on the first prong of the *Ellerth/Faragher* defense sort into two basic clusters. Where the plaintiff admits that he or she was on notice of a policy and complaint procedure and the court determines that the policy was reasonable, we have consistently found the first prong satisfied.[7] In *Boh Bros.*, however, *id.* at 463–65, our en banc court held that the defendant was not entitled to judgment as a matter

---

[5] Such a policy is not necessary as a matter of law to prevail on the defense, but the Supreme Court has indicated that it is, in almost all cases, a relevant and important factor (and, in the instant case, the board does not point to any other preventive measures aside from its policy and educational programming). *Ellerth*, 524 U.S. at 765. Thus, our inquiry usually focuses heavily on whether the employer promulgated a reasonably specific sexual-harassment policy and complaint procedure and whether it diligently investigated (and, where appropriate, remedied) alleged sexual harassment. *Boh Bros.*, 731 F.3d at 463.

[6] *See Faragher*, 524 U.S. at 781–82, 808–09 (noting that defendant had failed to promulgate its policy such that harassing supervisors were aware of it); *Boh Bros.*, 731 F.3d at 464 (examining impact of company's failure effectively to promulgate a detailed policy on both harasser's and victim's knowledge regarding sexual-harassment policy and complaint procedures).

[7] *See, e.g.*, *Giddens v. Cmty. Educ. Ctrs., Inc.*, 540 F. App'x 381, 389 (5th Cir. 2013); *Williams v. Barnhill's Buffet Inc.*, 290 F. App'x 759, 762–63 (5th Cir. 2008); *Lauderdale v. Tex. Dep't of Criminal Justice, Institutional Div.*, 512 F.3d 157, 162, 164 (5th Cir. 2007); *Thompson v. Naphcare, Inc.*, 117 F. App'x 317, 323–24 (5th Cir. 2004); *Wyatt v. Hunt Plywood Co.*, 297 F.3d 405, 410 (5th Cir. 2002); *Casiano v. AT&T Corp.*, 213 F.3d 278, 286–87 (5th Cir. 2000); *cf. Williams v. Admin. Review Bd.*, 376 F.3d 471, 478–79 (5th Cir. 2004) (analyzing *Ellerth/Faragher* framework in review of Department of Labor Administrative Review Board's adjudication of whistleblower retaliation claim under Energy Reorganization Act).

of law ("JML") on its *Ellerth*/*Faragher* defense when it had only a vague and general antidiscrimination policy without any mention of sexual harassment, the policy did not specify complaint procedures, and employees were not informed of the policy save for inconspicuous postings that the employees did not notice or read. And in *Faragher*, 524 U.S. at 808–09, the Court held that an employer's failure to promulgate its policy to a given worksite meant that its defense failed as a matter of law when raised against claims arising at that worksite.

Pullen does not cite, and we are not aware of, any other Fifth Circuit decisions holding that a company's policy and complaint mechanisms were unreasonable or that they were not sufficiently publicized to employees for the company to prevail at summary judgment. But Pullen does refer us to two closely analogous cases from sister circuits. In *Harrison v. Eddy Potash, Inc.*, 158 F.3d 1371, 1377 (10th Cir. 1998), the court denied JML where the evidence indicated that the policy was posted on a bulletin board, but the plaintiff testified that she was not aware of the policy and had never been given a copy.[8] Similarly, in *Marrero v. Goya of Puerto Rico, Inc.*, 304 F.3d 7, 21–22 (1st Cir. 2002), the court denied JML where the company put on evidence that it had hung posters describing the company sexual-harassment policy, but plaintiffs and other employees testified that they never received training on the policy, were not given a copy, and never saw the purported posters. Pullen also points to a pair of district court cases that reach similar conclusions,[9] and the board

---

[8] *Harrison* was initially tried before *Ellerth* and *Faragher* were decided; the Tenth Circuit reversed the judgment in the employer's favor. *See* 112 F.3d 1437, 1451 (10th Cir. 1997). The Supreme Court granted certiorari, vacated, and remanded for reconsideration in light of its recent decisions in *Ellerth* and *Faragher*. 524 U.S. 947 (1998). On remand, the circuit held that there were genuine disputes of material fact as to the employer's entitlement to immunity under *Ellerth* and *Faragher*.

[9] *See Wilburn v. Fleet Fin. Grp., Inc.*, 170 F. Supp. 2d 219, 228–31 (D. Conn. 2001);

does not cite any cases that hold to the contrary on similar facts.

A review of the summary-judgment evidence reveals that the district court erred in holding that the board's efforts to prevent sexual harassment were reasonable as a matter of law. Pullen produced evidence that, if believed, would show that employees at the central office were not trained on sexual harassment, were not informed of the existence of a policy, were not shown where to find it, and were not told whom to contact regarding sexual harassment. This would be a sufficient basis for a reasonable jury to find that the company did not take reasonable steps to prevent and remedy sexual harassment.

Pullen concedes the existence of the sexual-harassment policy and does not contend it would have been unreasonable if it had been promulgated and publicized. She maintains instead that the policy was not sufficiently publicized to allow for summary judgment in the board's favor. She points to the following evidence to show that the policy was not sufficiently publicized:

- Joyce Clemons, a longtime employee who had spent about thirty years at the central office in both permanent and substitute capacities, testified that she had never been given any information or training about sexual harassment.

- Mary Russell, a secretary in the classified-personnel department (part of the HR department) since 2003, testified that she was not given a copy of the harassment policy or any training on the subject.

- Pullen testified that she had never seen the sexual-harassment policy, was not aware that it was available online, was not trained on the policy, and had not seen it on any bulletin board at the central office. She made

---

*Meng v. Ipanema Shoe Corp.*, 73 F. Supp. 2d 392, 401 (S.D.N.Y. 1999).

similar claims by affidavit. She further attested that the bulletin board nearest her office in purchasing was encased in glass, such that even if the policy had been posted thereon, she would have been able to see only the first page.

- White testified that temporary employees at the central office were not trained on the sexual-harassment policy; that it was posted on several bulletin boards at the central office; that looking at the boards was the only way that temporary employees could find out about the policy; and that temporary employees were not instructed to look at the bulletin boards to learn about the policy.

- Annette Dunlap, secretary to the director of classified personnel, served in various capacities at the board for sixteen years. She testified that she had never spoken about sexual harassment or a sexual-harassment policy with anyone from the board and was unaware of any duty to report sexual harassment; that she had never had any training about sexual harassment; that she had never reviewed the sexual-harassment policy; and that she was not aware of any posted copies of it.

- Ebonie Nelson, a permanent employee of the board, indicated that she had never been trained on the policy. She further testified that, though a paper copy of the policy was posted on an ordinary, non-enclosed bulletin board in the classified-personnel office, she had never noticed it until the day before the deposition. She also said that the policy's pages were yellowing, so she surmised they had been posted for a long time.

- Shari Foreman, who was hired on a permanent basis to replace Pullen in the purchasing department, testified that, although she had received sexual-harassment training and information in a previous job in one of the schools that the board managed, she no longer received any training or information about the policy once she started working in purchasing

at the central office.

- Graham—the accused harasser—indicated that he was never directly trained about the sexual-harassment policy and never received a copy of it but  had been to outside training  that covered "harassment in the workplace" among other topics.

The board responds by referencing record evidence of its own:

- Mary Robinson, the board's chief of staff, stated, by affidavit, that the board maintained a detailed anti-harassment policy that expressly prohibited sexual harassment.  Further, she explained that the policy offered detailed instructions regarding how to assert a complaint, how to investigate a complaint, and the like; it also prohibited retaliation.  The policy was a matter of public record because it was approved by the elected board and was available online.  Robinson additionally averred that the policy was conspicuously posted in the central office.  Finally, she averred that the board conducted sexual-harassment training for the majority of its employees, including supervisors and directors at the central office.

- Based on the deposition testimony of Nelson, Joyce Lars, and White, the board averred that the evidence indicated that the policy was placed conspicuously on bulletin boards in the central office.

- White testified that the board held sexual-harassment training for many of its employees.

- Shari Foreman testified that, when she was working at one of the school campuses, she received frequent sexual-harassment training.

- Graham testified that he had received outside training that covered "harassment in the workplace."

The board also pointed to various pieces of record evidence regarding its

response to Graham's alleged conduct after Aimee Harris complained.  Further, the board urges that Pullen's evidence does not create a fact issue as to whether the policy was conspicuously posted, because at most the testimony indicates that certain individuals did not see it.  Finally, the board posits that Pullen's close acquaintance with Annette Dunlap, secretary to the head of the HR department, provided her with an avenue to report the misconduct.

The board's presentation is insufficient to satisfy its burden to show that there is no genuine dispute of material fact as to its entitlement to immunity under the *Ellerth/Faragher* defense.  Similar to the evidence in *Faragher*, *Boh Bros.*, *Harrison*, and *Marrero*, Pullen presented testimony from employees who indicated that they were given no training or information about the sexual-harassment policy and were not even aware of its existence.  The evidence, construed in Pullen's favor, also shows that Graham was never given a copy of the policy, never saw it, and was never trained regarding its contents.[10]  Moreover, the evidence generates a reasonable inference that the policy was not posted in a conspicuous location (given that several employees said they had never noticed it).  Thus, just as in *Faragher*, *Boh Bros.*, *Harrison*, and *Marrero*, there is a genuine dispute of material fact as to whether the board took reasonable steps to prevent sexual harassment in the central office.

Because the board has not demonstrated its right to summary judgment on the first element of the *Ellerth/Faragher* defense, we need not address the second.  The summary judgment as to the period of time in which Graham was

---

[10] The district court disregarded this testimony on the grounds that Graham also testified that he had attended training on "harassment in the workplace."  But this is precisely the sort of conflicting or ambiguous testimony that will not support summary judgment.  The district court's discussion improperly drew inferences in the board's favor rather than Pullen's.  Even without the thumb on the scale for Pullen, nothing in Graham's testimony indicates that he received any training at all on *sexual* harassment—as distinct from other prohibited forms of hostile-environment harassment.

No. 15-30871

Pullen's supervisor is reversed.

IV.

The district court granted summary judgment in favor of the board for the period of time during which Pullen worked in the HR department. The court reasoned that Graham was no longer Pullen's supervisor then, so her claim for that period should be analyzed under the standard for sexual harassment by a coworker. To hold a company vicariously liable for sexual harassment by a coworker, the plaintiff must show, *inter alia*, that the employer "knew or should have known of the harassment in question and failed to take prompt remedial action."[11] Because Pullen did not put forth any evidence that the board knew or should have known about the harassment, the court granted summary judgment.

In opposing summary judgment for this period of alleged harassment, Pullen makes three distinct claims. First, she contends that Graham was still her supervisor during this period of harassment, and thus she need not demonstrate that the board knew or should have known of the harassment. Second, she theorizes that the entire suit must be adjudicated under a supervisor-harassment standard, because the harassment was one continuous course of action. Third, she says the harassment was open and obvious, and therefore the board should have been aware of it. We disagree.

A.

Graham was not Pullen's supervisor during the period of time in which Pullen worked for White in HR. A person is a "supervisor" for purposes of sexual-harassment law when he or she can take tangible employment action

---

[11] *Royal v. CCC & R Tres Arboles, L.L.C.*, 736 F.3d 396, 401 (5th Cir. 2013) (quoting *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012)) (internal quotation marks omitted).

against the victim. *Vance*, 133 S. Ct. at 2443–44. A tangible employment action is a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Id.* (quoting *Ellerth*, 524 U.S. at 761) (internal quotation marks omitted).

Our caselaw does not plainly indicate who has the burden of proof to show that a given person was or was not the plaintiff's supervisor to trigger strict liability. But logic dictates that the burden is on the plaintiff. The harasser's status as a supervisor converts a negligence action into an action in strict liability. In closely analogous contexts—such as products-liability suits and tort actions in strict liability for injuries suffered from others' "abnormally dangerous" activities—it is universally the plaintiff's burden to establish the condition that triggers strict liability.[12] In effect, showing that an individual was the plaintiff's supervisor is an element of a strict-liability action for sexual harassment.[13] Pullen has the burden of showing that Graham was her supervisor during this period.

In its motion for summary judgment, the board averred that there was no record evidence that would support a finding that Graham was Pullen's supervisor; the board pointed to specific portions of the record that it believed demonstrated that failure of proof. The burden therefore shifted to Pullen to point to specific facts in the record that would allow a reasonable factfinder to

---

[12] Thus, in tort cases, the plaintiff bears the burden of demonstrating that a product is defective, or an activity is abnormally dangerous, such that strict liability is proper. *See, e.g.*, *Byrd v. Hunt Tool Shipyards, Inc.*, 650 F.2d 44, 47 (5th Cir. Unit A May 1981) (Louisiana law); *Davidson v. Stanadyne, Inc.*, 718 F.2d 1334, 1340 (5th Cir. 1983) (Texas law).

[13] *See Indest v. Freeman Decorating, Inc.*, 168 F.3d 795, 805 (5th Cir. 1999) (Wiener, J., concurring); *cf. Mack v. Otis Elevator Co.*, 326 F.3d 116, 122 (2d Cir. 2003) (placing burden on plaintiff to show that the harasser was a supervisor), *abrogated on other grounds by Vance*, 133 S. Ct. at 2434.

No. 15-30871

conclude that Graham retained the power to take tangible employment actions against her after she had left the purchasing department. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Pullen's opposition did not identify any such facts. Her only statement in response was this paragraph:

> Plaintiff disagrees that she must show the claim for any harassment after she left Purchasing around May 29, 2015, is simple co-worker harassment. Graham used his authority to move about the Central Office to pursue Pullen and sexually harass her. No simple co-worker could do that. Practically, to require a different standard of proof for the later harassment would simply confuse a jury as to what liability standard should be imposed and would unduly confuse the jury as to what damages should be awarded.

Pullen did not reference any legal authority, or facts in the record, to support this argument. The district court therefore rejected her "conclusory statement" and held that Graham was merely a coworker during this period of alleged harassment. We agree: A person's ability to move about an office and converse with those present there does not speak to his or her ability to fire, promote, demote, or otherwise affect the terms of one's employment.[14] Because Pullen did not show the existence of a genuine dispute of material fact as to whether Graham was her supervisor in the third harassment period, the district court was correct to conclude that he was not.

### B.

The district court analyzed the harassment under two distinct standards—one for the period in which Graham was Pullen's supervisor and another for when he was not. Pullen argues that this was error. We disagree.

It is blackletter law that supervisor harassment generates strict liability

---

[14] On appeal, Pullen broadens her arguments substantially. But because she did not make those arguments to the district court, they are waived. *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1071 n.1 (5th Cir. 1994) (en banc) (per curiam).

and that coworker harassment does not. In the face of this firm principle, Pullen presented only one theory, unsupported by authority, in the district court: that using different liability standards for the distinct periods of harassment would unduly confuse the jury. But Pullen does not explain how this minor increase in the complexity of the case would so overwhelm a jury as to justify a substantive modification of the fundamental principles of vicarious liability in sexual-harassment suits. We therefore reject the argument.

On appeal, Pullen also cites *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002), and *Stewart v. Mississippi Transportation Commission,* 586 F.3d 321, 329 (5th Cir. 2009), for the proposition that hostile-environment harassment is a single continuing violation. But Pullen did not present that argument to the district court, so it cannot support her appeal. *See Little*, 37 F.3d at 1071 n.1. Furthermore, the argument is meritless. The cited portions of *Morgan* and *Stewart* are inapposite—they address only the timeliness of a hostile-environment claim and have nothing to do with the correct standard for imputing vicarious liability to an employer.

### C.

Pullen claims the board should have been aware of the harassment because of its open and obvious character, though conceding that it did not have actual notice of the harassment until Harris reported it. But Pullen did not make this argument in the district court—her claim that the board should have known about the harassment is made for the first time on appeal. We therefore will not consider it. *See id.*

Because Pullen does not have any properly presented and preserved argument for why the board knew or should have known about the harassment, she cannot make out a *prima facie* case under the standard for coworker sexual harassment. Thus, we affirm the summary judgment for the period of

No. 15-30871

alleged harassment that took place after Pullen had left the purchasing department.

## V.

In summary, the summary judgment for the board as to the period of alleged harassment when Pullen worked in the purchasing department is REVERSED.  The summary judgment as to the period of alleged harassment after Pullen left the HR department is AFFIRMED.  The case is REMANDED for further proceedings.  We express no view on the ultimate merits or on what decisions the court should make on remand.  We rule only on the basis of the summary-judgment record filed in this appeal.